Opinion
 

 MARTIN, Acting P. J.
 

 This is an appeal from an order of dismissal after defendant’s motion for summary judgment was granted.
 

 On April 9, 1985, plaintiff William Nathan Brooks, a minor, by and through his guardian ad litem, Elizabeth Brooks, filed a complaint alleging causes of action for personal injury caused by motor vehicle, premises liability, general negligence and products liability.
 

 Plaintiff generally alleged that on May 6, 1984, Nathan Brooks, a minor, was injured when he “walked off the premises of the Villa Capri Apartment complex and began crossing Pacheco Road, at which time he was struck by a vehicle operated by John James Salter.” It was further alleged that Eugene Burger Management Corporation and Villa Capri Apartments, among others, owned and controlled the apartment complex located at 1000 Pacheco Road in Bakersfield.
 

 The premises liability cause of action alleged the “premises were occupied by a substantial number of children yet the premises lacked adequate fencing or other structural confinement.”
 

 The negligence cause of action alleged that “said premises lacked adequate fencing and other safeguards for children so as to proximately cause
 
 *1606
 
 the injuries and damages sustained by plaintiff WILLIAM NATHAN BROOKS as herein alleged.”
 

 The cause of action for products liability defined the product in question as follows: “A complex of apartment dwellings, playground equipment and grounds, located at 1000 Pacheco Road, Bakersfield, California, and known as the Villa Capri Apartment complex.”
 

 On November 25, 1985, Eugene Burger Management Corporation answered, generally denying the allegations of the unverified complaint and affirmatively alleging that Elizabeth Brooks was negligent in failing to supervise Nathan Brooks and that her negligence was the cause of the injury to Nathan and further alleged that the complaint failed to state a cause of action.
 

 On December 29, 1986, Eugene Burger Management noticed a motion for summary judgment to be heard on February 2, 1987. The notice stated that Eugene Burger Management Corporation “will move for an Order of Summary Judgment, and alternatively for an order that the following issues are without substantial controversy, [fl] 1. The EUGENE BURGER MANAGEMENT CORPORATION did not owe any duty or responsibility to fence its property prior to or on the date of the accident in question, [fl] 2. No conduct or activity or failure to act on behalf of EUGENE BURGER MANAGEMENT CORPORATION was a proximate cause of any injuries claimed by the plaintiff in the above-entitled matter.”
 

 In its memorandum in support of its motion for summary judgment, Eugene Burger Management Corporation for the most part cited
 
 pre-Rowland
 
 v.
 
 Christian (Rowland
 
 v.
 
 Christian
 
 (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]) landlord-tenant cases to the effect that it is the parents’ responsibility to care for the child, and not the apartment owner’s, and that a tenant is charged with protecting himselfifrom a patent condition such as the lack of a fence.
 

 The motion for summary judgment included a statement of uncontested facts, submitting that 12 facts were undisputed; plaintiff disputed only two: “As the tenant of the unit in question, the mother of the minor child had agreed, in receiving her lease and signing it, she would be responsible to supervise her children and that the management of the apartment complex was in no way responsible for such supervision”; and “The minor child was in the care, custody and control of ELIZABETH BROOKS, his mother, at the time of the accident.”
 

 Also filed in support of the motion for summary judgment was deposition testimony of Elizabeth Ann Brooks and a declaration of Shelly Beachler, the manager of the Villa Capri Apartments.
 

 
 *1607
 
 Plaintiff submitted in opposition to the motion for summary judgment points and authorities and his own statement of undisputed facts. John Hall, attorney for plaintiff, submitted a declaration attached to which were several documents referred to below and several photographs of the apartment complex and Nathan Brooks.
 

 The hearing on the motion for summary judgment was held on May 1, 1987, prior to which the trial court had issued a tentative ruling proposing to deny the motion for summary judgment.
 

 At the hearing, defendant objected to the lack of any declaration from plaintiff in opposition to the motion based on personal knowledge.
 

 The motion for summary judgment was granted in its entirety. Plaintiff then filed a document on May 26, 1987, entitled “request for specification of issues raised in order granting summary judgment.” In response thereto, the court entered a minute order containing the following: “There is no evidence whatsoever that the Defendants were negligent in the operation of the premises. . . . [T]here is no rule, regulation or ordinance cited by the plaintiff or discovered by the Court which requires that the premises be fenced.
 

 “2. If there was any defect in the premise [sz'c], the court does find it would have been a patent defect. It would have been clearly visible to the victim and his mother.
 

 “3. The defendants had no means of controlling the busy thoroughfare onto which the child wandered.
 

 “4. The court can find no evidence whatsoever of product liability or breach of warranty or a cause of action for strict liability arising from the Defendant’s operation of the apartment complex.
 

 “Accordingly, since there are no triable issues of fact, the motion for summary judgment was granted.”
 

 An order on motion for summary judgment and dismissal was signed and filed on July 30, 1987, and a notice of appeal was filed on September 29, 1987.
 

 Summary Judgment Procedure
 

 Code of Civil Procedure section 437c, subdivision (c), provides in relevant part: “The motion for summary judgment shall be granted if all the
 
 *1608
 
 papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.”
 

 “The purpose of the summary judgment procedure is to discover, through the media of affidavits, whether the parties possess evidence which demands the analysis of trial . . . .”
 
 (Leasmon
 
 v.
 
 Buck Aircraft Corp.
 
 (1975) 48 Cal.App.3d 376, 380 [121 Cal.Rptr. 768].)
 

 “The affidavits of the moving party are strictly construed, while those of the party opposing the motion are liberally construed, and doubts as to the propriety of granting the motion must be resolved in favor of the party opposing the motion.
 
 (Stationers Corp.
 
 v.
 
 Dun & Bradstreet, Inc.
 
 (1965) 62 Cal.2d 412, 417 .. . .)”
 
 (Miller
 
 v.
 
 Bechtel Corp.
 
 (1983) 33 Cal.3d 868, 874 [191 Cal.Rptr. 619, 663 P.2d 177].)
 

 “Summary judgment may be granted only when the evidence in support of the moving party establishes that there is no
 
 issue of fact
 
 to be tried. . . . The burden is on the moving party to provide supporting documents that establish that the claims of the adverse party are entirely without merit on
 
 any legal theory.
 
 ... If there is any doubt as to whether summary judgment should be granted, that doubt should be resolved in favor of the party opposing the motion.”
 
 (Southland Corp.
 
 v.
 
 Superior Court
 
 (1988) 203 Cal.App.3d 656, 663 [250 Cal.Rptr. 57], italics in original.)
 

 A defendant moving for summary judgment must conclusively negate a necessary element of the plaintiff’s case or establish a complete defense and thereby demonstrate that under no hypothesis is there a material factual issue which requires the process of a trial.
 
 (Platts
 
 v.
 
 Sacramento Northern Ry.
 
 (1988) 205 Cal.App.3d 1025, 1032 [253 Cal.Rptr. 269].) For instance, in the
 
 Platts
 
 case, plaintiff property owner brought an action against a railroad for damages resulting from the collapse of a railroad tunnel beneath his property. In support of its motion for summary judgment, defendant submitted declarations from one of its engineers who stated that the replacement of timbers did not contribute to the withdrawal of subjacent support, but that this maintenance actually strengthened the tunnel supports. Plaintiff supplied no declaration from a qualified expert contradicting any of the opinions set forth above. The court found that Northern’s declaration had negated the element of causation.
 

 Standard of Review
 

 On appeal, review is limited to the facts shown in the documents presented to the trial judge in making our independent determination of their construction and effect as a matter of law. (Bonus-Bilt,
 
 Inc.
 
 v.
 
 United
 
 
 *1609
 

 Grocers, Ltd.
 
 (1982) 136 Cal.App.3d 429 [186 Cal.Rptr. 357].) Thus, this court reviews the actions of the trial court for abuse of discretion as to the factual allegations and looks independently at the legal effects of those facts.
 

 Discussion
 

 Preliminarily, we address the content and format of plaintiff’s brief wherein the “argument” is set forth in eight parts, including the “conclusion.” While each part may address matters relevant to the appeal, in our view, the appeal essentially addresses two issues: A. Whether defendant owed plaintiff a duty of care upon the facts of the instant case; and
 

 B. Whether defendant’s apartment complex constitutes a “product” for purposes of products or strict liability. We will address these issues seriatim.
 

 A. Negligence and Premises Liability
 

 In the complaint, plaintiff alleged that defendant owned the property in question and negligently supervised the premises by allowing substantial numbers of children to be present without fencing or other structural confinement and, as a result thereof, Nathan Brooks sustained injuries when he walked off the premises into Pacheco Road and was struck by a vehicle, causing him personal injuries.
 

 Civil Code section 1714, subdivision (a), provides in relevant part: “Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property. . . .”
 

 In order to state a cause of action for negligence, plaintiff must state facts showing that defendant had a duty to plaintiff, that the duty was breached by negligent conduct, and that the breach was the cause of damages to the plaintiff.
 

 Premises liability is a form of negligence based on the holding in
 
 Rowland
 
 v.
 
 Christian, supra,
 
 69 Cal.2d 108, and is described as follows: The owner of premises is under a duty to exercise ordinary care in the management of such premises in order to avoid exposing persons to an unreasonable risk of harm. A failure to fulfill this duty is negligence. (BAJI No. 8.00 (1983 rev.).)
 

 To prevail in its summary judgment motion, defendant must negate at least one of the elements of each cause of action; here, it attempted to negate the elements of duty and proximate cause. The determination that a
 
 *1610
 
 defendant owed the plaintiff no duty of care is a complete defense to a cause of action for negligence.
 
 (Sprecher
 
 v.
 
 Adamson Companies
 
 (1981) 30 Cal.3d 358, 362 [178 Cal.Rptr. 783, 636 P.2d 1121].)
 

 The issue of whether a duty exists is a question of law to be determined by the court, and is reviewable de novo.
 
 (Owens
 
 v.
 
 Kings Supermarket
 
 (1988) 198 Cal.App.3d 379, 385 [243 Cal.Rptr. 627].) The
 
 Owens
 
 case was one of the few found in which an argument has been made that the owner of property has tort responsibility for injuries occurring to one off the premises. In that case, plaintiff was injured by the negligence of a third party on a public street where plaintiff had parked his car while shopping at the business owned by defendant. The trial court granted a demurrer to the complaint, which was affirmed on appeal, noting “[t]he courts, therefore, have consistently refused to recognize a duty to persons injured in adjacent streets or parking lots over which the defendant does not have the right of possession, management and control. (See, e.g.,
 
 Steinmetz
 
 v.
 
 Stockton City Chamber of Commerce
 
 (1985) 169 Cal.App.3d 1142 [214 Cal.Rptr. 405] [host of a business party could not be held liable for a criminal assault on a guest that occurred in a nearby parking lot that the host neither owned nor controlled];
 
 Nevarez
 
 v.
 
 Thriftimart, Inc.
 
 (1970) 7 Cal.App.3d 799 [87 Cal.Rptr. 50] [supermarket owed no duty of care to a young child who was hit by a car in an adjacent public street while returning from a grand opening of the store].)”
 
 (Owens
 
 v.
 
 Kings Supermarket, supra,
 
 198 Cal.App.3d 379, 386.)
 

 No suggestion of negligence arises from the mere happening of an accident.
 
 (American Employer’s Ins. Co.
 
 v.
 
 Smith
 
 (1980) 105 Cal.App.3d 94, 101 [163 Cal.Rptr. 649].) As the court noted in
 
 Edwards
 
 v.
 
 California Sports, Inc.
 
 (1988) 206 Cal.App.3d 1284, 1287 [254 Cal.Rptr. 170], “one can conjure up all manner of extreme measures which might have prevented this particular injury but that is not the issue. The fundamental inquiry is whether the duty of a landowner to exercise reasonable care in preventing injury to persons on the premises (Civ. Code, § 1714) required such measures.”
 

 In defining this duty, foreseeability plays a very significant role, “but a court’s task—in determining ‘duty’—is not to decide whether a
 
 particular
 
 plaintiff’s injury was reasonably foreseeable in light of a
 
 particular
 
 defendant’s conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party.”
 
 (Ballard
 
 v.
 
 Uribe
 
 (1986) 41 Cal.3d 564, 573, fn. 6 [224 Cal.Rptr. 664, 715 P.2d 624], italics in original.)
 

 
 *1611
 
 “ ‘It is axiomatic that without “ ‘a duty of care owed by the alleged wrongdoer to the person injured, or to a class of which he is a member . . ” no negligence can be found. [Citation.] Whether such a duty is owed in a given situation is a question of law for the court to determine. [Citations.]’ ”
 
 (Southland Corp.
 
 v.
 
 Superior Court, supra,
 
 203 Cal.App.3d 656, 663.)
 

 In the summary judgment moving papers, defendant did not contest the factual allegations of the complaint, i.e., did not contest that the apartment complex was owned by the defendant, that it fronted on a busy road, that it was not fenced, that a substantial number of children lived there, nor that Nathan Brooks was injured as a result of walking off the sidewalk onto the street.
 

 The declaration of Shelly Beachler, the manager of the Villa Capri Apartments, generally declared that she had seen various apartment complexes throughout this state, that few are fenced, that many are not, and in her opinion the custom in Bakersfield was for apartment complexes not to have fences which would run the entire length of the property. She also declared that all tenants at the apartment complex were specifically given a list of “house rules,” which provide for children to play in designated areas only, for children under school age to be accompanied by a parent or guardian when in public or in recreation areas, and that the manager does not provide supervision and is not responsible for any damage or injury sustained while using the play areas and/or facilities.
 

 Defendant also filed deposition testimony of Nathan’s mother, Elizabeth Brooks, to the effect that Nathan was in her care at the time of the accident.
 

 Plaintiff submitted in opposition to the motion for summary judgment points and authorities and his own statement of undisputed facts. John Hall, attorney for plaintiff, submitted a declaration along with certain documents tending to show that Elizabeth Brooks was eligible for a housing and urban development housing subsidy and certifying that fact to the Villa Capri Apartments. Also attached was an unsigned lease agreement; an undated letter to tenants regarding use of the playground equipment; another document to tenants regarding use of bicycles, skates, skateboards and hot wheels [s/c]; a letter dated April 15, 1983, signed by Elizabeth Bryan (Elizabeth Bryan was the name used by Elizabeth Brooks in 1983) on Villa Capri letterhead entitled “house rules”; an undated, unsigned document entitled “lease addendum and house rules”; a blank lease agreement regarding Villa Capri; and various poorly reproduced photographs apparently of Nathan Brooks, the apartment complex, and the street in front of the apartment complex.
 

 
 *1612
 
 Plaintiff’s statement of undisputed facts also refers to deposition testimony of a Mir. Wren and a Mr. Payne, but no such testimony is found in the record on appeal.
 

 At the hearing on the motion for summary judgment, counsel for defendant noted that plaintiff had no facts since no declaration of any party based on personal knowledge was filed. He further argued there were no disputed facts: “I think the court would have to agree with that when you see the declarations of undisputed facts. Nothing that I submitted was disputed. I haven’t argued any facts. We are not talking about facts. We are talking about law.” He finally pointed out that no legal authority had been cited or discovered which required fencing around an apartment complex simply because it housed children from low income families.
 

 Counsel for plaintiff noted that the entire complex would not have to be fenced but “that very minor modifications would have had drastic impact on making this a safer facility.
 

 “When you go to the complex you can see that it is essentially set up in a series of building [szc] in a square with a plaza in the middle. Thereare [szc] openings that allow entry into the plaza. The buildings themselves act as a type of fencing and simply to provide some type of barrier of a wrought-iron nature across the openings would have, as I indicated, drastically improved the safety of this particular complex.”
 

 Thus, plaintiff argued that it was a question of fact whether defendant owed a duty to plaintiff to provide fencing or some other means of “structural confinement” while defendant attempted to show that defendant had no duty to construct a fence in front of the apartment complex as a matter of law.
 

 In our view plaintiff’s argument misses the mark. Whether, or not, defendant owed a
 
 duty
 
 to plaintiff to provide fencing or some other means of confinement to the subject premises presents a question of law for the trial court and this court upon appeal. Only upon a finding of a duty, as a matter of law, do the further questions of breach of that duty, proximate cause and resulting injury and damages arise. The trial court found no duty to exist in the instant case. We must agree.
 

 Although neither party to this action has cited, nor in our independent research have we found, any case on all fours with the facts herein,
 
 Owens
 
 v.
 
 Kings Supermarket, supra,
 
 198 Cal.App.3d 379, and
 
 Sprecher
 
 v.
 
 Adam
 
 
 *1613
 

 son Companies, supra,
 
 30 Cal.3d 358, are instructive. In
 
 Owens,
 
 the court held that a supermarket owed no duty to a customer injured by the negligence of a third party on a public street adjacent to the premises. Plaintiff argued that the owner or occupier of land has a duty to exercise ordinary care to prevent injuries to persons on adjacent property or public streets caused by a natural or artificial condition which the owner-occupier controls. The court responded: “In
 
 Sprecher
 
 v.
 
 Adamson Companies, supra,
 
 30 Cal.3d 358, the court addressed the question of whether an uphill landowner owed a duty to a downhill landowner to exercise reasonable care to prevent injuries to the downhill property caused by an active landslide condition existing on the uphill property. In concluding that such a duty did exist, the court rejected a long-standing common law distinction between liability for natural, as opposed to artificial, conditions of the land.
 
 (Id.
 
 at pp. 362-372.) The court emphasized, however, that a landowner’s duty to persons injured off the premises by a natural or artificial condition of the land was ‘grounded in the possession of the premises and the attendant right to control and manage the premises.’
 
 (Id.
 
 at p. 368.) The key fact that renders the duty articulated in
 
 Sprecher
 
 inapplicable to this case is that plaintiff’s injuries are alleged to have been caused by failure to exercise reasonable care with respect to the ‘commercial use’ of a public street neither owned nor controlled by the supermarket.”
 
 (Owens
 
 v.
 
 Kings Supermarket, supra,
 
 198 Cal.App.3d at p. 385.)
 

 As the
 
 Owens
 
 court further stated, the courts have consistently refused to recognize a duty to persons injured in adjacent streets or parking lots over which the defendant does not have the right of possession, management or control. (198 Cal.App.3d at p. 386.)
 

 In
 
 Wylie
 
 v.
 
 Gresch
 
 (1987) 191 Cal.App.3d 412 [236 Cal.Rptr. 552], the trial court, in an action brought by tenants against their landlord for damages resulting from an attack on the tenant’s minor child by a neighbor’s dog, sustained the landlord’s demurrer without leave to amend. The Court of Appeal affirmed. The tenants contended the landlord had a duty to warn them of the neighbor’s dog and its propensities. The court stated: “Furthermore, even if there is a special relationship between landlord and tenant, it would be unreasonable to extend it beyond the basis of the relationship, the subject property. Insofar as dangers in the neighborhood are concerned, the tenant’s position is no different from that of any member of the general public. Neither the tenant nor members of the public rely on a landlord to warn them of such dangers. While the law has progressed far in the direction of finding duty where there is dependence (e.g.,
 
 Mann
 
 v.
 
 State of California, supra,
 
 70 Cal.App.3d at pp. 779-780; Rest.2d Torts, § 314A), it does not require a general warning such as that urged by appellants here.
 
 (See Bill
 
 v.
 
 Superior Court
 
 (1982) 137 Cal.App.3d 1002, 1013 . . . , citing
 
 *1614
 

 Davidson
 
 v.
 
 City of Westminster, supra,
 
 32 Cal. 3d at pp. 208-209.)”
 
 (Id.
 
 at p. 424.)
 

 Thus, in
 
 Owens
 
 and
 
 Wylie
 
 v.
 
 Gresch
 
 and other cases previously cited, our appellate courts have been reluctant to find a duty on the part of landlords or occupiers of land or premises to warn of or otherwise protect tenants or customers from dangers arising or existing on land, such as streets, parking lots, etc., over which the landlords or occupiers of the adjacent property have no right of possession, management or control. In the instant case, the danger existed not on defendant’s premises but, rather, on the adjacent Pacheco Road. There exists no statute, rule or ordinance that requires the building of a fence or barrier on defendant’s premises. Plaintiff has cited no precedent or authority holding that a landlord has a duty to fence his premises to keep young children inside. Nor does the owner or possessor of land owe such a duty at common law.
 
 (Corcoran
 
 v.
 
 City of San Mateo
 
 (1953) 122 Cal.App.2d 355, 358 [265 P.2d 102, 39 A.L.R.2d 1448].)
 

 We find the trial court correctly held as a matter of law that defendant owed no duty to plaintiff to provide fencing or some other means of confinement to the subject premises. If defendant had no duty of due care to plaintiff, then plaintiff’s cause of action in negligence must fall and the motion for summary judgment, in this respect, was properly granted. In view of this conclusion, we need not address defendant’s argument regarding lack of proximate causation.
 

 B. Products Liability
 

 Plaintiff’s products liability cause of action, while pleaded generally, included allegations that the “product” was: “A complex of apartment dwellings, playground equipment and grounds, located at 1000 Pacheco Road, Bakersfield, California, and known as the Villa Capri Apartment complex.” Plaintiff further alleged he used the “product” in the manner intended by defendant and in a manner that was reasonably foreseeable by defendant as involving a substantial danger not readily apparent and without adequate warnings of the danger. In essence, plaintiff contends the apartment house complex and grounds were defectively designed and constructed in that the complex was not fenced so as to prevent young residents of the complex from straying onto Pacheco Road.
 

 The basis of strict liability is the furnishing of defective goods.
 
 (Silverhart
 
 v.
 
 Mount Zion Hosp.
 
 (1971) 20 Cal.App.3d 1022, 1026 [98 Cal.Rptr. 187, 54 A.L.R.3d 250].) Restatement Second of Torts section 402A provides:
 

 “Special Liability of Seller of Product for Physical Harm to User or Consumer.
 

 
 *1615
 
 “(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if.
 

 “(a) the seller is engaged in the business of selling such a product, and
 

 “(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
 

 “(2) The rule stated in Subsection (1) applies although
 

 “(a) the seller has exercised all possible care in the preparation and sale of his product, and
 

 “(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.”
 

 BAJI No. 9.00, “Products Liability - Strict Liability In Tort,” provides: “The_of an article is liable for injuries [proximately] [legally] caused by a defect in [design] [or] [manufacture] of the article which existed when the article left possession of the defendants], provided that the injury resulted from a use of the article that was reasonably foreseeable by the defendants].” The Use Note to BAJI No. 9.00 further provides: “In first line blank insert proper characterization of alleged tortfeasor, such as manufacturer, distributor, wholesaler, retail dealer, lessor, licensor, bailor, franchisor, etc.”
 

 “Strict liability differs from negligence in that it eliminates the necessity for the injured party to prove that the manufacturer of the product which caused injury was negligent. It focusses not on the conduct of the manufacturer but on the product itself, and holds the manufacturer liable if the product was defective.”
 
 (Brown
 
 v.
 
 Superior Court
 
 (1988) 44 Cal.3d 1049, 1056 [245 Cal.Rptr. 412, 751 P.2d 470].)
 

 The doctrine of strict products liability is based upon a defect in the product, and can arise from an unsafe design as well as from faults attributable to the manufacturing process.
 
 (Becker
 
 v.
 
 IRM Corp.
 
 (1985) 38 Cal.3d 454, 478 [213 Cal.Rptr. 213, 698 P.2d 116, 48 A.L.R.4th 601].)
 

 For the cause of action for strict products liability there is no necessity to show duty or breach of duty but only that the product was defective and that the injury to the plaintiff was caused by that defective condition.
 

 
 *1616
 
 “A product may be defective in design if it fails to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, or, even if it satisfies an ordinary consumer’s expectations, if it embodies ‘excessive preventable danger,’ i.e., the risk of danger inherent in the challenged design outweighs the benefits.”
 
 (DeLeon
 
 v.
 
 Commercial Manufacturing & Supply Co.
 
 (1983) 148 Cal.App.3d 336, 344 [195 Cal.Rptr. 867].)
 

 Thus, a manufacturer and/or a seller of a defectively designed or manufactured product may be held liable for resulting damages to the user by reason of the defect in design or manufacture without proving a duty or breach of duty. However, a products liability claimant must meet a condition precedent to successfully maintain the action. He or she must show that the object or instrumentality claimed to be defective was in fact a “product” as defined or contemplated by the Restatement of Torts, legislation or case law. Whether or not a product was defectively designed or manufactured is a factual issue to be determined by the trier of fact. However, whether or not the subject object or instrumentality is a “product” is a question of law for the trial court and subject to de novo review by this court upon appeal.
 

 The types of products that have been alleged to be defective in manufacture or design include business and industrial machinery and equipment, chemicals, clothing, asbestos, drugs, food and beverages, household equipment, furnishings and appliances, medical devices and equipment, motor vehicles, boats, airplanes, toys and, undoubtedly, countless others. In the instant case, the alleged defective product, as previously stated, was described as a “complex of apartment dwellings, playground equipment and grounds, located at 1000 Pacheco Road, Bakersfield . . . .” Plaintiff has not cited and in our independent research we have not found any statute, case law or other legal authority to the effect that an apartment complex may be considered a product for the purposes of products liability.
 

 Plaintiff does not contend any of the buildings constructed on the complex or the playground equipment or grounds, or any part of them, are defectively designed or constructed; rather, he contends the entire complex as an entity is defective in its manufacture and design in that the complex was not fenced. As we previously discussed in part A of this opinion, neither statutory law, common law nor case law required defendant to fence its apartment complex nor is it customary in the industry or in the Bakersfield area to do so. We further note the ordinary builder of a dwelling or other structure on land has not been held strictly liable.
 
 Kriegler
 
 v.
 
 Eichler Homes
 
 (1969) 269 Cal.App.2d 224 [74 Cal.Rptr. 749] is not helpful to plaintiff in this regard. There, radiant heating within the homes designed
 
 *1617
 
 and constructed by the builder was found to be defective, i.e., an integral part of the building itself.
 
 Del Mar Beach Club Owners Assn.
 
 v.
 
 Imperial Contracting Co.
 
 (1981) 123 Cal.App.3d 898 [176 Cal.Rptr. 886, 25 A.L.R.4th 336] involved claims brought after erosions and other defects caused damages to homes constructed on a scenic bluff. While the appellate court found these claims analogous to the reasoning in
 
 Kriegler,
 
 they are clearly distinguishable from the instant case.
 
 Becker
 
 v.
 
 IBM Corp., supra,
 
 38 Cal.3d 454 is equally unhelpful to plaintiff.
 
 Becker
 
 involved injuries suffered by a tenant as a result of a defective shower door, i.e., a specifically designed and manufactured
 
 product.
 
 The court held the landlord strictly liable for a
 
 latent defect
 
 in the premises which existed at the time the premises were let to the tenant.
 
 (Id.
 
 at p. 464.) Again, in our view,
 
 Becker
 
 is distinguishable from the instant case. Moreover, we note here the trial court specifically found that the dangers of children playing in the street are obvious and
 
 patent,
 
 and if any such danger existed in the present case such danger was obvious and
 
 patent.
 

 After review of the entire record before us, we conclude the trial court properly granted summary judgment as to plaintiff’s cause of action based on products liability. In our view, “a complex of apartment dwellings, playground equipment and grounds . . .” does not constitute a product within the meaning and contemplation of strict products liability in tort law. We have found no cases which would extend this theory so far. Rather, it appears plaintiff merely designates his fourth cause of action “Products Liability” but founds his argument in support thereof upon the theory of “Premises Liability,” also pleaded herein, which must fall for lack of a duty owed by defendant to plaintiff to provide fencing or some other means of confinement to the subject premises.
 

 The judgment is affirmed. Defendant is awarded costs of appeal.
 

 Vartabedian, J., and Brown (G. A.), J.,
 
 *
 
 concurred.
 

 *
 

 Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.