[No. A052798. First Dist., Div. One. Apr. 10, 1992.]

STEVEN SCOTT, a Minor, etc., et al., Plaintiffs and Appellants, v. CHEVRON U.S.A., Defendant and Respondent.

## Counsel

Walkup, Shelby, Bastian, Melodia, Kelly, Echeverria & Link, John Echeverria and B.E. Bergesen III for Plaintiffs and Appellants.

Crosby, Heafey, Roach & May, Jacqueline M. Jauregui, James C. Martin and Kathy M. Banke for Defendant and Respondent.

## Opinion

**DOSSEE, J.**—Plaintiffs contend that defendant maintained a dangerous condition on its property which contributed in part to a fatal auto accident on a highway adjacent to the property. Defendant moved for summary judgment on the alternate grounds that it owed no duty of care to plaintiffs or that its use of its property was not the proximate cause of plaintiffs' injuries. The trial court granted defendant's motion for summary judgment.

We find Chevron owed no duty to plaintiffs as a matter of law, and therefore, we affirm the judgment of the trial court.

### Factual and Procedural Background

On March 1, 1985, John McGee was driving a company owned truck westbound on State Route 4 when he drifted off the road, struck a guardrail, and lost control of the vehicle. The truck veered back toward the center line of the highway and, as there is no barrier between the opposing two lanes of traffic, travelled into the eastbound lane where it collided with a car driven by Herbert Scott. Scott was killed and the passengers in his car, which

included his parents and one of his sons, were seriously injured. McGee was later convicted of vehicular manslaughter and causing bodily injury while driving under the influence of alcohol.

Scott's family filed suit against McGee, the owner of the truck, the State of California, and Chevron U.S.A. Plaintiffs received a $1.3 million settlement from McGee and the owner of the truck. Plaintiffs received $50,000 from the State of California in settlement of their claim that state had negligently installed the guardrail. Chevron remains as the sole defendant.

Chevron maintains an underground pipeline within a right-of-way on private property adjacent to Route 4. In the 1970's, Chevron added a "cathodic protection system" to the pipeline in order to protect the pipeline from corrosion. The system manifests itself above ground in the form of a piece of electrical equipment known as a "rectifier." Rectifiers are placed at intervals along the pipeline and one of them is situated near where the accident occurred. A pipe fence built by Chevron protects this particular rectifier.

In 1981, the state placed a guardrail between the shoulder of the highway and the rectifier. According to a document located in state files and dated March 7, 1980, a "guardrail is desirable at this location to reduce the likelihood of vehicles leaving the roadway and hitting the High Pressure Commodity Gas Valve assembly, which is a fixed object."[1] Chevron was never consulted about the guardrail and took no part in designing or installing it.

Plaintiffs' theory is that Chevron negligently located its rectifier at the apex of a curve, causing the state to erect a guardrail to protect motorists from this hazard, which in turn created a substantial risk of cross-median accidents.

Chevron moved for summary judgment on the grounds that it owed no duty to plaintiffs and that it did not proximately cause plaintiffs' injuries. Plaintiffs submitted no evidence in opposition to the motion for summary judgment. The trial court granted Chevron's motion and entered judgment in Chevron's favor.

## DISCUSSION

█ Summary judgment is appropriate when the defendant's moving papers negate an essential element of the plaintiff's case, notwithstanding

---

[1] The parties agree that the document was referring to the rectifier.

factual conflict upon other aspects of the case. (*Andrews* v. *Wells* (1988) 204 Cal.App.3d 533, 538 [251 Cal.Rptr. 344].) A determination that Chevron owes plaintiffs no duty of care would negate an essential element of plaintiffs' cause of action for negligence and would be a complete defense. (See *Brooks* v. *Eugene Burger Management Corp.* (1989) 215 Cal.App.3d 1611, 1619-1620 [264 Cal.Rptr. 756].) ■ Whether a duty of care exists is a question of law for the court, not the jury, and is reviewable de novo. (*Weissich* v. *County of Marin* (1990) 224 Cal.App.3d 1069, 1076 [274 Cal.Rptr. 342]; *Brooks* v. *Eugene Burger Management Corp., supra,* 215 Cal.App.3d at p. 1620.)

Plaintiffs maintain that Chevron had a duty to exercise care in the location and maintenance of its rectifier in order to avoid exposing persons on the adjacent highway to an unreasonable risk of harm.

■ All persons are required to use ordinary care to prevent injury to others from their conduct. (Civ. Code, § 1714, subd. (a); *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 112 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].) This general rule requires a property owner to exercise ordinary care in the management of his or her premises in order to avoid exposing persons to an unreasonable risk of harm. (*Rowland, supra,* at p. 119; *Sprecher* v. *Adamson Companies* (1981) 30 Cal.3d 358, 371 [178 Cal.Rptr. 783, 636 P.2d 1121]; BAJI No. 8.00 (7th ed. 1986).) ■ A property owner who creates a dangerous condition on a public roadway is liable for foreseeable injuries caused thereby. (*Carson* v. *Facilities Development Co.* (1984) 36 Cal.3d 830, 846 [206 Cal.Rptr. 136, 686 P.2d 656].)

■ Duty is not an immutable fact of nature; it is "only a shorthand expression of the sum total of public policy considerations which lead the law to protect a particular plaintiff from harm. [Citations.]" (*Lopez* v. *McDonald's Corp.* (1987) 193 Cal.App.3d 495, 504 [238 Cal.Rptr. 436].) In order to determine the boundaries of the duty to prevent injury to others in any given case, we consider several factors, including the foreseeability of the harm, the degree of certainty of injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and the consequences to the community of imposing a duty to exercise care with the resulting liability for breach, and the availability, cost, and prevalence of insurance. (*Nally* v. *Grace Community Church* (1988) 47 Cal.3d 278, 293 [253 Cal.Rptr. 97, 763 P.2d 948]; *Rowland* v. *Christian, supra,* 69 Cal.2d at p. 113.)

The foreseeability of the harm, though not determinative, has become the chief factor in duty analysis. As this court noted in *Weissich* v. *County of*

*Marin, supra,* 224 Cal.App.3d 1069, and as demonstrated by plaintiffs' argument in the instant case, confusion has arisen over the concept of foreseeability and the variety of roles it plays in tort law. (*Id.* at p. 1076; see also *Lopez* v. *McDonald's Corp., supra,* 193 Cal.App.3d at p. 507, fn. 6.) ▪ While in many contexts foreseeability is a question of fact for the jury, in defining the boundaries of duty, foreseeability is a question of law for the court. (*Ibid.; Ballard* v. *Uribe* (1986) 41 Cal.3d 564, 572, fn. 6 [224 Cal.Rptr. 664, 715 P.2d 624].)

▪ "The *Rowland* analysis of landowner liability directs the court to weigh the foreseeability of harm with a nonexhaustive list of other factors and policy considerations in determining whether liability should be restricted within the factual context of a specific case. [Citations.] Within this analysis, the 'court's task—in determining "duty"—is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party.' [Citation.] Viewed in this light, the question of foreseeability in a 'duty' context is a limited one for the court, and readily contrasted with the fact-specific foreseeability questions bearing on negligence (breach of duty) and proximate causation posed to the jury or trier of fact. [Citation.]" (*Lopez* v. *McDonald's Corp., supra,* 193 Cal.App.3d at pp. 506-507, italics in original, fns. omitted.)

▪ When we apply the *Rowland* factors, we find no duty on the part of Chevron in this case. Rarely is an injury completely unforeseeable, and certainly it is foreseeable that a vehicle might leave a highway and strike a fixed object located on adjacent property. However, foreseeability is not commensurate with duty, and the mere placing of a fixed object next to a highway does not necessarily create an unreasonable risk of harm. (See Rest.2d Torts, § 368; *Hoffman* v. *Vernon Tp.* (1981) 97 Ill.App.3d 721 [53 Ill. Dec. 135, 423 N.E.2d. 519].) The only evidence here that the rectifier presented any danger was the state's decision to install a guardrail.[2]

While an argument could possibly be made that Chevron has a duty to protect the public from striking its rectifier, we see no justification for imposing a duty on Chevron to protect the public from cross-median accidents on a highway adjacent to their property. Plaintiffs submit that an auto accident is an auto accident regardless of whether it results from striking a fixed object, or from being hit by a drunk driver, but in the latter instance the

---

[2]Maps and aerial photographs submitted by the state show the rectifier is located just off the highway on a long sweeping curve.

property owner's connection to the accident becomes too attenuated and he or she has little or no ability to control the acts of third persons. The motorist injured by the drunk driver is not the foreseeable victim of the actions of the property owner.

Ironically, in this case, any concern Chevron might have had regarding persons striking the rectifier was probably alleviated when the state installed the guardrail. Once the guardrail was installed, it was not reasonably foreseeable that the rectifier would cause harm to the motoring public. In fact, it is very likely that had Chevron removed or relocated its rectifier, the guardrail would have remained and this tragic accident still would have occurred.

The other *Rowland* factors similarly weigh heavily in favor of finding no duty in this case. While plaintiffs certainly suffered injury, Chevron's conduct had a negligible connection with that injury, as it was primarily inflicted by McGee. No moral blame can be attached to Chevron's conduct, as there is nothing inherently wrong with placing a fixed object on one's property. While future harm might be prevented by holding property owners responsible whenever a fixed object on their property contributes to injuries suffered on adjacent highways, we doubt that society is willing to so restrict property rights. Imposing liability in these circumstances would effectively require landowners to dedicate a portion of their property as a safety zone to protect errant drivers. (See *Nava* v. *McMillan* (1981) 123 Cal.App.3d 262 [176 Cal.Rptr. 473] [unreasonable and unfair to impose liability on the owner of a dog on fenced property whose mere presence frightens a passerby and causes injuries].) We think that a decision to force property owners to protect the motoring public should be reached through legislative action rather than tort law.[3]

Plaintiffs have not found any authority which provides real support for their position. We agree with plaintiffs that many of the cases cited by Chevron, which generally hold a property owner owes no duty to persons injured on adjacent property over which the property owner has no control, are not on point here. (See, e.g., *Seaber* v. *Hotel Del Coronado* (1991) 1 Cal.App.4th 481 [2 Cal.Rptr.2d 405] [hotel owed no duty to person struck by car on public street while using sidewalk to leave hotel]; *Brooks* v. *Eugene Burger Management Corp.*, *supra*, 215 Cal.App.3d 1611 [apartment building

---

[3]We do not mean to imply that a property owner is free to place an object next to a highway with no thought to the possible consequences. For example, property owners may be held liable if they obstruct views at an intersection (see *Swanberg* v. *O'Mectin* (1984) 157 Cal.App.3d 325, 330 [203 Cal.Rptr. 701]), or if they place a fixed object where it is reasonably foreseeable that persons traveling with reasonable care would deviate from the highway in the ordinary course of travel (see Rest.2d Torts, § 368).

owner had no affirmative duty to erect fence to protect minors from injury in adjacent public street]; *Donnell* v. *California Western School of Law* (1988) 200 Cal.App.3d 715 [246 Cal.Rptr. 199] [school had no duty to student attacked on adjacent sidewalk]; *Owens* v. *Kings Supermarket* (1988) 198 Cal.App.3d 379 [243 Cal.Rptr. 627] [market owed no duty to customer struck by car on adjacent public street]; *A. Teichert & Son, Inc.* v. *Superior Court* (1986) 179 Cal.App.3d 657 [225 Cal.Rptr. 10] [property owner owed no duty to decedent who was riding a bicycle on highway when struck by truck making delivery to defendant's property].) These cases involve a failure to take affirmative action to protect persons from dangerous conditions on adjacent property. Here, plaintiffs have alleged their injuries were caused in part by a dangerous condition on Chevron's property.

However, the case which plaintiffs rely on most heavily is not comparable to the instant case. In *McDaniel* v. *Sunset Manor Co.* (1990) 220 Cal.App.3d 1 [269 Cal.Rptr. 196], we held an apartment owner might have a duty to maintain an existing fence in order to protect minors from wandering onto adjoining property where a dangerous condition existed. (*Id.* at pp. 8-10.) The *McDaniel* decision's analysis of a landlord's duty to protect minor tenants is simply not pertinent to resolving the question of whether a property owner owes a duty to travelers on an adjacent highway.

We conclude that Chevron owed no duty to plaintiffs as a matter of law and that the trial court properly granted Chevron's motion for summary judgment. Because we find no duty existed, we need not reach the issue of proximate cause.

The judgment is affirmed.

Strankman, P. J., and Stein, J., concurred.

A petition for a rehearing was denied May 4, 1992.