Filed 9/28/22  Schall v. Marina Admiralty Co. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| JANE SCHALL, | B312918 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCV37031) |
| v. | |
| MARINA ADMIRALTY COMPANY et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael E. Whitaker, Judge.  Affirmed.

Law Offices of Brian D. Witzer, Brian D. Witzer and Eric R. Canton for Plaintiff and Appellant.

Alderman & Hilgers and Allison R. Hilgers for Defendants and Respondents.

Jane Schall (appellant) appeals from a judgment entered after the trial court granted summary judgment in favor of Marina Admiralty Company and E&S Ring Management Corp. (E&S) (collectively respondents) on appellant's claim of negligence (premises liability) against them. We find no error and affirm the judgment.

## FACTUAL BACKGROUND

Appellant is a resident of an apartment complex called Mariners Village, which is owned and operated by respondents.[1] Appellant resided at Mariners Village from 2014 or 2015 until the time of the incident. On November 28, 2017, in the early evening, appellant was walking with her dog from a nearby harbor channel to her apartment. They proceeded to a bridge extending over a water feature on the subject property. Appellant described the bridge as "a wooden bridge, like a pathway that leads from a driveway into the one section of the apartment buildings. There were—It was low ropes on each side, trees—surrounded by trees."

As appellant and her dog were crossing the subject wooden bridge, someone was coming the other way. Appellant recalled moving over "a little bit," as she had done in the past when she encountered another person while crossing the bridge. The next thing appellant could recall was that she could see her feet over her head. She recalled the bang of her head against the rocks, that there was a lady there and she was wet.

---

[1] E&S is a property management company and is an agent of Marina Admiralty Company, which is the owner of the Mariners Village apartment complex.

As she was walking across the bridge, appellant's dog was on her left and she moved to her right to pass the lady on the bridge before she fell. Appellant did not remember if her foot went off the side of the bridge when she moved to the right, but her body went over the top of the rope. Appellant's dog did not fall off the bridge with her.

Appellant testified that the incident occurred in the early evening, when it was "dark" or "darkening." Although it was dark, appellant was used to walking on the bridge and did not recall having any trouble seeing at the time of the incident. She admitted that nothing was blocking her view of the bridge.

Appellant walked that way often, estimating that she crossed the bridge approximately 15 times per month. Appellant stated that the wooden bridge was one of the ways to get from her building to the channel, where she liked to walk. There were many other paths and bridges throughout the complex which she could have used as alternate routes that evening.

Appellant testified that she felt something was wrong with the bridge at the time she fell, that "the rope was defective and . . . it was in a weird place." Appellant had never used the rope previously as a handrail or anything else. Appellant did not know anyone else that had fallen off the bridge.

## PROCEDURAL HISTORY

Appellant filed her complaint for negligence (premises liability) against respondents on October 16, 2019. On December 13, 2019, respondents filed an answer containing a general denial and 12 affirmative defenses.

**Respondents' motion for summary judgment and supporting evidence**

Respondents filed their motion for summary judgment on December 22, 2020. The motion was accompanied by a statement of undisputed material facts and an appendix of evidence.

Among respondents' evidence was the declaration of Mark Wagner. At the time of his declaration, Wagner was the president of Ring Financial, the parent company of E&S. Prior to working for Ring Financial, Wagner was employed by E&S from approximately February 1987 to March 2019, when he began working at Ring Financial. One of his job titles, for approximately two and a half years, was manager of Mariners Village. At the time of the subject incident, Wagner was the vice president of asset management for E&S. Wagner was very familiar with the property at issue and had visited it on hundreds of occasions.

Wagner provided some background regarding the property. Mariners Village is a nautical-themed apartment complex with approximately 981 residential units. At the time of the incident, there were several wooden bridges with rope sides located on the property. The property had been constructed in the late 1960's or early 1970's, and the bridges had been there since the time of the original construction.

Other than the incident reported by appellant on November 28, 2017, Wagner was not aware of any other incident involving a person falling off one of the wood and rope bridges. Wagner provided a map of the Mariners Village property, showing that there were multiple routes that appellant could have taken to get to and from the channel area at the time of the

incident, which would not have involved walking over the subject bridge.

**Appellant's opposition**

Appellant filed her opposition to respondents' motion for summary judgment on March 1, 2021. In appellant's responsive separate statement of material facts, appellant admitted the vast majority of facts at issue were undisputed. As to the few facts that appellant claimed were "disputed," appellant provided legal argument without reference to any supporting evidence that would create a factual dispute.

In addition to a responsive separate statement, appellant provided evidence in the form of a declaration from Mark J. Burns, a forensic engineer, building contractor and certified building inspector. Burns had reviewed the deposition of appellant, the building records, and photographs from the scene, among other things. In addition, Burns personally inspected the property and took photographs. Burns opined that the bridge at issue violated 1968 Los Angeles County Building Code section 1714 (section 1714), which requires all unenclosed floor openings to be protected by a guardrail no less than 42 inches in height.

Additionally, Burns observed that there was an approximately three-inch gap between the edge of the bridge and the rope guardrail. Due to this gap, pedestrians could not accurately tell where the edge of the bridge was. In addition, due to the gap, the rope would not stop a pedestrian from falling off the bridge due to a misstep. Burns opined that the gap between the edge of the bridge and the rope guardrail was a dangerous condition and a direct cause of the incident.

Burns also noted that the poorly guarded edge of the bridge had inadequate illumination. He opined that clear visibility of

5

the location of the edge of the bridge was necessary to traverse safely across the bridge. Astrological data showed that the sun set at 4:44 p.m. on November 28, 2017, in Marina del Rey, California. Thus, the sun would not have provided significant illumination at the time of the incident. Burns opined that lack of adequate illumination exacerbated the dangerous condition on the bridge.

Burns further noted that apartment industry standards required the owner to implement a maintenance program. Respondents had not produced evidence of a maintenance program. It was Burns's opinion that a reasonable maintenance program and inspection of the bridge would have revealed the dangerous condition regarding the bridge's configuration.

**Respondents' reply**

Respondents filed their reply memorandum, evidentiary objections, and proposed order thereon on March 1, 2021. Respondents pointed out that nearly all of the material facts were admittedly undisputed by appellant, and the opposing papers failed to put forth any triable issues of material fact. Respondents argued that Burns's declaration was in large part inadmissible and that they were entitled to summary judgment as a matter of law.

**Trial court decision**

The trial court issued a written decision on March 12, 2021. The court found that respondents' evidence met their burden of showing that the condition of the bridge did not pose an unreasonable risk of harm to appellant. Thus, the burden shifted to appellant to raise triable issues of material fact as to whether the condition of the bridge posed an unreasonable risk of harm.

6

The court addressed the Burns declaration. As to Burns's opinion that the bridge violated section 1714, the court found that the outdoor bridge did not qualify as an "unenclosed floor opening" within the meaning of section 1714. As to the three-inch gap between the edge of the bridge and the rope guardrail, the court found that Burns's statement that a pedestrian would not be able to ascertain the edge of the bridge was not supported by the record. Thus, Burns's opinion had no evidentiary value. Because a pedestrian could ascertain the edge of the bridge using due care, respondents did not have a duty to protect pedestrians from a fall. Likewise, as to Burns's conclusion that there was inadequate lighting on the bridge, Burns did not identify a dangerous condition on the bridge for the lack of lighting to exacerbate.

The court found that Wagner's declaration adequately showed that respondents did not have notice of any allegedly dangerous condition of the bridge before appellant's fall.

The court found that appellant failed to meet her burden to create triable issues of material fact as to her claim of premises liability. Thus, the court granted respondents' motion for summary judgment.

**Judgment and notice of appeal**

On April 7, 2021, the trial court entered judgment in favor of respondents. On April 9, 2021, appellant filed her notice of appeal.

## DISCUSSION

### I. Summary judgment and standard of review

A motion for summary judgment should be granted if the moving papers show that there are no triable issues of material

7

fact and the moving party is entitled to judgment as a matter of law. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) The moving party bears the burden of showing that one or more elements of the plaintiff's cause of action cannot be established or there is a complete defense to the cause of action. (*Id.* at p. 849.) The burden then shifts to the defendant to show that a triable issue of one or more material facts exists as to that cause of action or defense. The defendant must "'set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto.'" (*Ibid.*)

In reviewing a trial court decision on a summary judgment motion, "'[w]e review the trial court's decision de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections were made and sustained.'" (*State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1035.)

## II. Premises liability law

"The elements of a negligence claim and a premises liability claim are the same: a legal duty of care, breach of that duty, and proximate cause resulting in injury." (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1158.) Generally, "[t]he owner of premises is under a duty to exercise ordinary care in the management of such premises in order to avoid exposing persons to an unreasonable risk of harm. A failure to fulfill this duty is negligence." (*Brooks v. Eugene Burger Management Corp.* (1989) 215 Cal.App.3d 1611, 1619 (*Brooks*).) Thus, the fundamental inquiry is whether the landowner exercised reasonable care in preventing injury to persons on the premises. (*Id.* at p. 1620.)

Property owners are not liable for "damages caused by a minor, trivial, or insignificant defect in his property." (*Cadam v.*

8

*Somerset Gardens Townhouse HOA* (2011) 200 Cal.App.4th 383, 388-389.) However, even where a defect is not trivial, the property owner must have actual or constructive knowledge of the dangerous condition before liability may be imposed. (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1206.) Thus, to impose liability on a property owner, "'the owner or occupier "must have either actual or constructive knowledge of the dangerous condition or have been able by the exercise of ordinary care to discover the condition, which if known to him, he should realize as involving an unreasonable risk to invitees on his premises."'" (*Ibid.*) The plaintiff has the burden of showing that the property owner "had notice of the defect in sufficient time to correct it." (*Ibid.*)

Property owners are generally not liable where a danger is open and obvious. "Foreseeability of harm is typically absent when a dangerous condition is open and obvious." (*Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 447 (*Jacobs*).) "'Generally, if a danger is so obvious that a person could reasonably be expected to see it, the condition itself serves as a warning, and the landowner is under no further duty to remedy or warn of the condition.'" (*Ibid.*) An exception to this rule exists when it is foreseeable that the danger may cause injury despite the fact that it is obvious. (*Ibid.*) For example, "obviousness will not negate a duty of care when it is foreseeable that, because of necessity or other circumstances, a person may choose to encounter the condition." (*Ibid.*) For example, in *Osborn v. Mission Ready Mix* (1990) 224 Cal.App.3d 104, a trucker was injured when walking across a demolished concrete ramp, which was the only way of reaching a silo for delivery of materials. The *Osborn* court found a disputed issue of fact as to

9

premises liability because the worker's "employment required him to pass across this area in order to complete his work." (*Id.* at p. 123.)

## III. Dangerous condition

To prove negligence, appellant must show that the bridge was a dangerous condition that created an "unreasonable risk of harm." (*Brooks, supra*, 215 Cal.App.3d at pp. 1619-1620.) To show that the bridge did not pose an unreasonable risk of harm, respondents provided evidence that the property had been built in approximately 1970 and contained nearly a thousand residential units. Despite the volume of individuals that would have traversed the subject bridge since the property was constructed, respondents knew of no prior incident of anyone else who had fallen off the bridge. Appellant provided no contradictory evidence. In fact, appellant admitted that she had walked over the same bridge dozens, if not hundreds, of times before the incident without any problem. Given the volume of foot traffic over the bridge, including by appellant herself, the lack of prior incidents constituted undisputed evidence that the bridge was not a dangerous condition creating an unreasonable risk of harm.

Appellant argues that a dangerous condition existed due to respondents' failure to comply with section 1714, and that the trial court erred in determining that section 1714 did not apply to the subject bridge. We disagree. Section 1714 reads, in full:

> "All unenclosed floor and roof openings; open and glazed sides of landings and stairs; balconies or porches which are more than 30 inches above grade; and roofs used for other than service of the building shall be protected by a guardrail. Guardrails for stairs shall be not less than 30 inches above the

10

nosing of treads.  All other guardrails shall be not less than 36 inches in height.  Open guardrails shall have intermediate rails or an ornamental pattern such that no object nine inches in diameter can pass through the guardrail."

In interpreting the provision, we must look to its words and give them their usual and ordinary meaning.  (*People v. Pillsbury* (2021) 69 Cal.App.5th 776, 784.)  "'"The statute's plain meaning controls the court's interpretation unless its words are ambiguous."'"  (*Ibid.*)  The bridge in question is not an unenclosed floor or roof opening.  Nor is it a landing, balcony, or porch.  Thus, we find that the trial court did not err in determining that section 1714 does not apply to the subject bridge.

Further, appellant has set forth no law suggesting that a building code violation constitutes negligence per se.  Case law suggests that building code violations do not automatically create a dangerous condition.  (See, e.g., *Jones v. Awad* (2019) 39 Cal.App.5th 1200, 1210 ["minor deviations from the standards set forth in the [Uniform Building Code]" failed to raise triable issue of material fact with respect to constructive notice]; *Caloroso v. Hathaway* (2004) 122 Cal.App.4th 922, 928 [noting that the trial court properly found "no foundation for [an expert's] opinion that noncompliance with certain building codes and standards made the crack dangerous"].)  Appellant has failed to provide evidence that the bridge was unreasonably dangerous.  The single incident involving appellant does not lead to a conclusion of unreasonable danger under the circumstances of this case.  (*Brooks, supra*, 215 Cal.App.3d at p. 1620 ["No suggestion of negligence arises from the mere happening of an accident."].)

11

In addition to the lack of compliance with section 1714, appellant emphasizes that there was a three-inch gap between the outermost edge of the bridge and the loose rope located along the side of the wooden bridge. Appellant argues that the low height of the ropes, in conjunction with the three-inch gap, created a dangerous condition. Appellant's argument is undermined by the evidence in the case. The bridge, and other similar bridges throughout the property, had been in place since approximately 1970, and hundreds if not thousands of pedestrians had traversed the bridge during that time frame without incident. In addition, appellant "testified that she walked across the bridge from which she fell approximately 15 times per month for the five or six years she lived in the apartment complex prior to her fall." Prior to the incident on November 28, 2017, she did not have any accidents or close calls on the bridge. Further, as the trial court noted, because nothing in the record indicated that a pedestrian could not ascertain the edge of the bridge, Burns's statement suggesting such a condition was conclusory and without evidentiary foundation.

Finally, appellant complains that there was no artificial lighting on the bridge at the time of the incident, thus it was even more difficult to see the edge of the bridge in the dark. However, there is no evidence to support a theory that inadequate lighting caused appellant to fall. Appellant admitted in her deposition that she had no trouble seeing at the time and that she was familiar with the bridge. There is no evidence to support a theory that inadequate lighting contributed to the accident. Further, appellant does not argue that inadequate lighting was the dangerous condition—she argues that inadequate lighting exacerbated the dangerous condition. As set forth above,

12

appellant has failed to show that a dangerous condition existed, thus the inadequate lighting argument is irrelevant.[2]

## IV. Open and obvious condition

As an alternative defense, respondents argued that they were under no duty to warn appellant of the configuration of the bridge because it was an open and obvious condition. "'Generally, if a danger is so obvious that a person could reasonably be expected to see it, the condition itself serves as a warning, and the landowner is under no further duty to remedy or warn of the condition.'" (*Jacobs, supra*, 14 Cal.App.5th at p. 447.) "In that situation, owners and possessors of land are entitled to assume others will 'perceive the obvious' and take action to avoid the dangerous condition." (*Ibid.*) An exception exists if it is foreseeable that the danger may cause injury despite the fact that it is obvious. For example, obviousness will not negate a duty of care where it is foreseeable that due to necessity, a person may choose to encounter the condition. (*Ibid.*)

In *Jacobs*, the plaintiff fell into an empty pool when the diving board on which he was standing collapsed. (*Jacobs, supra*, 14 Cal.App.5th at pp. 441-442.) The *Jacobs* court upheld

---

[2] We decline to address the parties' competing arguments regarding actual and constructive notice. The doctrine of notice is only relevant where there is a dangerous condition on the property. (*Ortega v. Kmart Corp., supra,* 26 Cal.4th at p. 1206 ["Because the owner is not the insurer of the visitor's personal safety . . . , the owner's actual or constructive knowledge of the dangerous condition is a key to establishing its liability."].)

The undisputed evidence in this case fails to establish the existence of a dangerous condition, thus there was no dangerous condition for which respondents could have had actual or constructive notice.

summary judgment for the defendant, finding that the plaintiff was not compelled to step on the diving board and could have found a safer means of observing that aspect of the property. (*Id.* at p. 448.)

Appellant admitted that she was familiar with the subject bridge, as she had crossed it many times on previous occasions. She does not allege that the bridge was materially different on the night that she fell. Appellant also indicated she had no trouble seeing before she fell, thus she could see the configuration of the bridge. Finally, appellant admitted that she did not need to cross the bridge in order to get to her apartment on the night of the incident. Because the configuration of the bridge was open and obvious, and appellant did not cross the bridge out of necessity, respondents were under no duty to warn her or remedy the condition of the bridge.

Appellant argues that in contrast to the trial court's finding, there were various reasons why the risk posed by the bridge was not open and obvious. Appellant argues there was no way that she could have known the ropes were too low or that there was a three-inch gap between the outermost edge of the bridge and the loose rope. However, appellant testified that she had walked across the bridge many times. She was familiar with the bridge. Thus, she was also familiar with the three-inch gap between the edge of the bridge and the lowest rope. There was no evidence that the configuration of the bridge was hidden from view or otherwise obscured. Appellant again raises the issue of insufficient illumination, arguing that respondents' failure to provide adequate illumination at night exacerbated the risk and made it more difficult for appellant to fully appreciate where the edge of the bridge was located. Appellant's own testimony that

14

she had no trouble seeing at the time of the incident undermines this argument.

## V.  Conclusion

Respondents were under no duty to remedy or warn of the configuration of the bridge, which, based on the undisputed evidence, did not pose an unreasonable risk of harm. Alternatively, even if the bridge did constitute an unreasonable risk of harm, any such risk was open and obvious.  Because appellant has failed to set forth evidence establishing a triable issue of fact as to whether respondents breached a duty to her, summary judgment was properly granted.

## DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs of appeal.

_____
CHAVEZ, J.

We concur:


_____
LUI, P. J.


_____
HOFFSTADT, J.

15