Filed 5/15/24  Hinshaw v. Anaheim City Centre Property CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JESSYCA HINSHAW,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>ANAHEIM CITY CENTRE PROPERTY, LLC, et al.,<br><br>    Defendants and Respondents. | G062091<br><br>(Super. Ct. No. 30-2020-01162270)<br><br>ORDER MODIFYING OPINION, DENYING REHEARING, AND DENYING REQUEST FOR PUBLICATION; NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed on April 15, 2024, be modified as follows:

On page 14, at the end of the first full paragraph, add the following footnote:

[4] Hinshaw also relies on *Sweetwater* to make a similar argument concerning additional evidence she presented in opposition to the summary judgment motion to which the court sustained an evidentiary objection.  In the trial court, Hinshaw submitted a portion of her deposition testimony wherein she stated "[an employee of the Department of

Rehabilitation] told me that several of her students had also fallen in the same spot." The trial court sustained City Centre's objections to this testimony on the grounds of hearsay, speculation, and lack of foundation. Hinshaw does "not dispute the court's determination that the statement was hearsay and thus currently inadmissible." But she asserts "it was reasonably possible that [she] could cure [the hearsay] defect" by calling the employee as a witness at trial and the trial court, therefore, should have considered this evidence when ruling on the summary judgment motion. Hinshaw did not make this argument in the trial court. She did not urge the court to consider this evidence despite its evidentiary deficiencies or seek to cure these evidentiary deficiencies. Nor did Hinshaw request a continuance to obtain additional, necessary discovery, an affidavit from the employee (who had been already deposed), or other facts essential to oppose the summary judgment motion. (Code Civ. Proc., § 437c, subd. (h).) She made no effort to demonstrate the evidentiary defects concerning this statement were curable. (See *Sweetwater, supra*, 6 Cal.5th at p. 949 ["If an evidentiary objection is made, the plaintiff may attempt to cure the asserted defect or demonstrate the defect is curable"].)

On page 14, second full paragraph, second sentence, delete: "We conclude Russell's declaration (original or supplemental) is not dispositive to our analysis and do" and insert in its place: "Based on the discussion below, we need".

On page 15, first full paragraph, delete the last sentence: "And Hinshaw did not present any evidence showing the existence of a triable issue of material fact as to any of these factors."

On page 15, second full paragraph, first sentence, delete: "only one factor —" and delete "—" between "defect" and "but".

On page 16, at the end of the first partial paragraph, add the following footnote:

[5] Even if we consider Hinshaw's deposition testimony concerning the statement from the Department of Rehabilitation's employee, it does not create a triable issue of material fact as to whether the walkway defect was dangerous. It's true "the occurrence or nonoccurrence of prior similar accidents at the same site is '"relevant to the determination of whether a condition is dangerous."'" (*Stack, supra*, 91 Cal.App.5th at p. 119.) But Hinshaw's deposition testimony concerning the employee's statement was insufficient to create a triable issue as to whether "similar accidents" occurred at the site. While it indicates other people have fallen in the same area, it does not provide any additional information to make it probative. Although doubts about the evidence must be resolved in favor of the party opposing summary judgment (*Regents of University of California v. Superior Court, supra*, 4 Cal.5th at p. 618), there are limits. (See *Tully v.*

*World Savings & Loan Assn.* (1997) 56 Cal.App.4th 654, 660 ["[E]vidence may be so lacking in probative value that it fails to raise any triable issue"]; *Champlin/GEI Wind Holdings, LLC v. Avery* (2023) 92 Cal.App.5th 218, 226 ["'Responsive evidence that "gives rise to no more than mere speculation" is not sufficient to establish a triable issue of material fact'"].)  Even drawing reasonable inferences in favor of Hinshaw, this portion of Hinshaw's deposition testimony provides such limited probative information, if any, that it fails to raise a triable issue of material fact.

The petition for rehearing is DENIED.  There is no change in the judgment.

Respondents have requested our opinion be certified for publication.  The request is DENIED.

Pursuant to California Rules of Court, rule 8.1120(b), the clerk of this court is directed to forward a copy of our opinion, this order, and the request for publication to the Supreme Court.  It is our recommendation the request for publication be DENIED. The opinion follows established law and does not meet the standards for certification of publication set forth in California Rules of Court, rule 8.1105(c).


MOTOIKE, J.

WE CONCUR:


MOORE, ACTING P. J.


GOODING, J.

3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JESSYCA HINSHAW,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>ANAHEIM CITY CENTRE PROPERTY, LLC, et al.,<br><br>    Defendants and Respondents. | G062091<br><br>(Super. Ct. No. 30-2020-01162270)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, John C. Gastelum, Judge.  Affirmed.

Keiter Appellate Law and Mitchell Keiter, for Plaintiff and Appellant.

Horvitz & Levy, Andrea L. Russi, Steven S. Fleischman; Marc Trachtman Law, Marc A. Trachtman and Timothy M. Smith, for Defendants and Respondents.

Jessyca Hinshaw filed this suit after she fell outside an office building in Anaheim (the premises) owned by Anaheim City Centre Property, LLC and managed by Davis Property Management, Inc. (collectively, City Centre). The trial court granted summary judgment in favor of City Centre after concluding they sustained their burden of establishing the trivial defect doctrine applied and Hinshaw had not presented sufficient evidence to raise a triable issue of material fact as to whether the walkway defect was dangerous and whether it caused her injury.

Hinshaw contends the court erred because she presented sufficient evidence to create a dispute as to whether the walkway's condition was dangerous or trivial and there was a factual dispute as to whether the walkway defect caused her injury. We affirm.

FACTUAL AND PROCEDURAL SUMMARY

I.

THE INCIDENT AND HINSHAW'S COMPLAINT

On November 1, 2019, at approximately 9:00 a.m., Hinshaw was on the premises to attend an appointment at the Department of Rehabilitation when she fell and hit her head on the concrete pavers outside the building. It was the first time Hinshaw had been to this office on the premises. It was a clear day, and she believed it was "probably sunny." She suffered a traumatic brain injury, memory loss, inability to focus, vision deterioration, cognitive dysfunction, and other injuries requiring medical treatment.

In September 2020, Hinshaw filed a complaint alleging causes of action for premises liability, negligence, and negligence per se.[1]  In the complaint, Hinshaw alleged that while walking on the premises, she "tripped and fell on uneven and/or broken outdoor flooring, . . . thereby falling onto the ground and causing [her] to forcefully strike her head and face on the ground."  She alleged the owner "negligently . . . failed to maintain the exterior areas, flooring and/or pavers" of the premises in a reasonably safe condition and "failed to otherwise exercise due care with respect to the matters alleged . . . ."  Anaheim City Centre Property filed an answer denying all liability.

## II.

### CITY CENTRE'S MOTION FOR SUMMARY JUDGMENT

City Centre moved for summary judgment or, in the alternative, summary adjudication, contending the evidence showed at most a trivial defect and there was no triable issue of material fact as to the causes of action.  City Centre argued Hinshaw's premises liability cause of action failed because:  (1) There was no evidence of a condition on the premises creating an unreasonable risk of harm as "[a]ny condition on the [p]remises amount[ed] to a trivial defect as a matter of law"; and (2) Hinshaw could "offer no evidence that a condition [o]n the [p]remises . . . created an unreasonable risk of harm that caused the underlying incident."  City Centre asserted Hinshaw's negligence cause of action failed "because Defendants did not breach a duty of care" and her negligence per se cause of action failed because Hinshaw "failed to allege, or produce evidence of, any violation of statute, ordinance, or regulation of a public entity" against

---

[1]  Hinshaw's original complaint alleged four causes of action against BRE CA Office Owner, LLC and Does 1 through 50.  The complaint was subsequently amended to add City Centre as defendants and remove BRE CA Office Owner.  The original complaint was also amended to dismiss Joseph Hinshaw as a named plaintiff in the action and his cause of action for loss of consortium.  The parties neglected to include in the appellate record documents showing these amendments.

3

City Centre. The motion was supported by: Hinshaw's responses to special interrogatories, her deposition testimony, a declaration from City Centre's expert Brad Rutledge, Hinshaw's medical records, and a declaration from a principal for Anaheim City Centre Property.

In Hinshaw's response to interrogatories, she explained how the incident occurred: "While traversing the exterior of the premises, [she] tripped and fell on an uneven outdoor flooring, which generally consisted of concrete pavers, thereby falling onto the ground and causing [her] to forcefully strike her head and face on the ground. At the time of the incident, the exterior walkway suffered from irregularities due to abrupt changes in elevation, which are not expected by a passerby . . . ."

Hinshaw could not describe with specificity what the alleged dangerous condition looked like immediately prior to the incident, and she did not see the alleged dangerous condition prior to the incident.

In her September 2021 deposition, Hinshaw stated that after exiting the building, she was walking to her car when she "face-planted" and woke up on the "floor" bloody and in pain. She did not remember falling or what caused her to fall; she only remembered walking out of the building and waking up on the ground. She did not recall water on the ground. She did not know what caused her to fall but believed she fell because "[t]he floor looked very uneven and there were bricks like jutting out of the floor." She described the walkway as "not a solid straight pathway, there's like dips and divots. [¶] . . . [¶] And it should be smooth. Like it should be a smooth walkway but there were bricks that were broken and jagged and jutting out upward." She did not remember tripping on anything, slipping, or losing her balance before she fell. She repeated she did not know how she fell but believed the uneven walkway and the bricks jutting out created a dangerous condition and caused her to fall. During her deposition, Hinshaw circled an area on a photograph of the premises's exterior to indicate where she believed she fell.

4

Hinshaw went to the emergency room on November 2, 2019. Her medical records indicate she complained of a headache and left eye pain from a mechanical fall one week prior. (This is inconsistent with the complaint, which alleges the incident occurred one day prior, on November 1, 2019.) According to her medical records, she reported she "was walking across the street 1 week ago when she 'saw white' and fell." She was unsure if she lost consciousness.

Rutledge, a biomechanics consultant, provided an expert declaration in support of the summary judgment motion. On June 1, 2021, he inspected, measured, and photographed the outdoor courtyard area of the premises. He confirmed the area he inspected, measured, and photographed was the area Hinshaw alleged the incident occurred by reviewing her deposition transcript in which she circled the area on a photograph. Rutledge declared: "Any height differentials between the pavers in the area circled by [Hinshaw] measured no more than 1/4 to 5/8 an inch." Photographs of the walkway and concrete pavers on the premises were attached to his declaration.

Anaheim City Centre Property took possession of the premises on October 21, 2019 and Davis Property Management became the property manager that day. Since then, they had not received any complaints about the condition of the area where Hinshaw alleges the incident occurred, other than her complaint, and they had not been made aware of any broken pavers. Nor had they made repairs to the area where Hinshaw alleges the incident occurred.

### III.

#### HINSHAW'S OPPOSITION

Hinshaw opposed the motion for summary judgment and summary adjudication on all three causes of action. She asserted the motion should be denied as to the premises liability claim because: (1) There was a condition on the premises that created an unreasonable risk of harm, and the trivial defect doctrine did not apply; and

5

(2) There was evidence of a dangerous condition on the premises that caused Hinshaw's injuries. Hinshaw asserted the motion failed as to the negligence cause of action because City Centre breached a duty of care and failed as to the negligence per se cause of action because City Centre violated California building code sections 3401A.1 and 3401A.2.

Hinshaw's opposition was supported by: a declaration by her counsel, her deposition testimony, a declaration by the premises's former manager, and a declaration by expert Paul Russell.

Russell, a construction consultant, provided an expert declaration in support of Hinshaw's opposition. Russell reviewed several documents, including Hinshaw's deposition transcripts. He visited the premises on two occasions (January 18, 2021 and June 1, 2021) to inspect, photograph, take measurements, and notate those measurements. On both visits, he was accompanied by Hinshaw's counsel. He did not dispute Rutledge's measurements of the height differentials between the pavers, nor did Russell articulate his own measurements.

Hinshaw's opposition did not include any photographs; rather she argued the photographs attached to City Centre's summary judgment motion did not accurately depict the conditions on the premises. Hinshaw asserted "the Court (and, more appropriately, jury) should rely on 3D mapping/imaging, which [Hinshaw] will obtain and proffer at the time of trial following a further inspection of the Subject Property . . . ."

The general manager of the company that managed the premises from July 15, 2015 to October 21, 2019, declared, based on information and belief, that no repairs or construction were performed on the premises's exterior pavers during that time.

III.

SUBSEQUENT PROCEEDINGS AND THE COURT'S RULING

City Centre filed a reply, along with evidentiary objections to the declarations by Russell and Hinshaw's counsel.

6

The summary judgment motion was scheduled for a hearing on July 8, 2022. The day before the hearing, the court issued a tentative ruling to grant summary judgment. In its tentative ruling, the court discussed concerns it had with Russell's declaration, to which City Centre had objected. The court's tentative ruling stated: "[Hinshaw] provided evidence in the form of her expert Paul Russell who opined, 'While I was at the property on January 18, 2021, and June 1, 2021, I observed several unsafe conditions with respect [to] the distressed exterior paver system because the pavers suffer from multiple elevations, creating many slopes and jagged surfaces in various directions, and further elevations and slopes. I observed several areas of displaced pavers as well as lifted pavers presenting dangerous conditions throughout the entire exterior paver system, not only limited to the Subject Area.' [Citation.] [¶] While this would appear to provide a factual dispute as to the trivial nature of the premises, Mr. Russell fails to actually indicate the area he observed was the area circled by Plaintiff in the photo at her deposition. That is, there is no indication the area he observed was the area in which Plaintiff fell, other than his indication that Plaintiff's attorney 'Mr. Nehora indicated that [Hinshaw] was injured in that area.' [Citation.] However, that appears to be double hearsay. Additionally, although he indicates he reviewed Plaintiff's deposition, he does not establish he relied on it in determining where she fell. [Citation.] Therefore, most of his declaration suffers from lack of foundation." (Boldface omitted.)

The court also addressed Hinshaw's testimony in its tentative ruling, stating: "although Plaintiff testified that the pathway contained 'dips and divots', and that there were bricks that were 'broken and jagged and jutting out upward[ ]' [Citation], Plaintiff fails to clearly establish with photographs or other evidence where those areas are in relation to where she may have fallen." The court's tentative ruling as to the premises liability cause of action concluded City Centre had sustained their burden of establishing a trivial defect and Hinshaw had "not pointed to any other evidence that made the area dangerous." The court's tentative ruling also concluded City Centre had

7

sustained their burden on the issue of lack of causation and Hinshaw had not created a triable issue of material fact for either the premises liability or negligence causes of action. Addressing the negligence per se cause of action, the court's tentative ruling found City Centre sustained its burden and Hinshaw had not created a triable issue of material fact, given the lack of foundation issue with her expert's declaration.

The morning the hearing on the summary judgment motion was to be held, the court continued the matter on its own motion. Ten days later, without seeking leave of court, Hinshaw filed a "supplemental brief" in opposition to the summary judgment motion, seeking "to address two issues raised by the Court's tentative ruling on the motion." (Boldface and underline omitted.) For the first issue, Hinshaw asserted the summary judgment motion should be denied because City Centre had "not produced affirmative evidence to establish that Hinshaw [could not] obtain evidence to support her causes of action." Regarding the second issue, Hinshaw asserted she satisfied her burden of raising a triable issue of material fact because Russell's opinion in his declaration had a sufficient evidentiary basis.

Along with the supplemental brief, Hinshaw submitted a supplemental declaration by Russell. In his supplemental declaration, Russell explained that in reaching his opinions in the matter, he reviewed and relied upon Hinshaw's deposition testimony concerning where she alleged the incident occurred and he confirmed this was the area he inspected, measured, and photographed. He further stated: "In the area in which Plaintiff circled and contends the incident occurred, I observed several unsafe conditions with respect to the distressed exterior paver system because the pavers suffered from multiple elevations, creating many slopes and jagged surfaces in various directions, and further elevations and slopes. I observed several areas of displaced pavers as well as lifted pavers presenting dangerous conditions throughout the entire exterior paver system."

8

Following a hearing on July 20, 2022, the court granted City Centre's summary judgment motion as to all causes of action. In doing so, it sustained multiple objections by City Centre to Russell's declaration, finding much of Russell's declaration was based on hearsay and lacked foundation. The court did not address Hinshaw's supplemental brief or Russell's supplemental declaration in its ruling; the court's ruling was substantially the same as its tentative ruling. The court entered judgment in favor of City Centre, and Hinshaw appealed.

## DISCUSSION

### THE COURT PROPERLY GRANTED SUMMARY JUDGMENT

*A. Summary Judgment and Standard of Review*

"Summary judgment is appropriate 'if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' [Citation.] To prevail on the motion, a defendant must demonstrate the plaintiff's cause of action has no merit. This requirement can be satisfied by showing either one or more elements of the cause of action cannot be established or that a complete defense exists. [Citations.]

"'[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact.' [Citation.] 'A prima facie showing is one that is sufficient to support the position of the party in question.' [Citation.] 'There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.'" (*Beltran v. Hard Rock Hotel Licensing, Inc.* (2023) 97 Cal.App.5th 865, 876–877.)

9

"A court ruling on a summary judgment motion 'shall consider all of the evidence set forth in the papers, *except the evidence to which objections have been made and sustained*.'" (*Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 542.)

"'On review of an order granting or denying summary judgment, we examine the facts presented to the trial court and determine their effect as a matter of law.' [Citation.] We review the entire record, 'considering all evidence set forth in the moving and opposition papers except that to which objections have been made and sustained.' [Citation.] Evidence presented in opposition to summary judgment is liberally construed, with any doubts about the evidence resolved in favor of the party opposing the motion." (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)

## B. The Premises Liability and Negligence Causes of Action

Hinshaw contends the court's grant of summary judgment as to the premises liability and negligence causes of action should be reversed for two reasons: (1) There was a factual dispute as to whether the walkway was a dangerous condition or trivial defect; and (2) There was a factual dispute as to whether the walkway caused her injuries.[2] We disagree. In our de novo review, we conclude any defects in the walkway where Hinshaw fell were trivial as a matter of law. Because we reach this conclusion, we do not reach the issue of whether there was a triable issue of material fact as to causation.

---

[2] Hinshaw does not challenge the court's grant of summary judgment on her negligence per se cause of action. Thus, we deem this issue forfeited on appeal. (*Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125 ["an appellant's failure to discuss an issue in its opening brief forfeits the issue on appeal"].)

1. *Trivial Defect Doctrine*

"Premises liability is a form of negligence." (*Brooks v. Eugene Burger Management Corp.* (1989) 215 Cal.App.3d 1611, 1619.) "The elements of a negligence claim and a premises liability claim are the same: a legal duty of care, breach of that duty, and proximate cause resulting in injury." (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1158.) "The owner of [a] premises is under a duty to exercise ordinary care in the management of such premises in order to avoid exposing persons to an unreasonable risk of harm." (*Brooks v. Eugene Burger Management Corp., supra*, at p. 1619.)

"Property owners are required '"to maintain land in their possession and control in a reasonably safe condition" [citation], and to use due care to eliminate dangerous conditions on their property.'" (*Fajardo v. Dailey* (2022) 85 Cal.App.5th 221, 226.) But "[i]t is well-settled law that landowners are 'not liable for damages caused by a minor, trivial or insignificant defect in property.' [Citation.] In the context of sidewalk defect cases, landowners 'do[] not have a duty to protect pedestrians from every sidewalk defect that might pose a tripping hazard—only those defects that create a *substantial* risk of injury to a pedestrian using reasonable care.' [Citations.] This simple principle of law is referred to as the trivial defect doctrine—'it is not an affirmative defense but rather an aspect of duty that [a] plaintiff must plead and prove . . . .'" (*Miller v. Pacific Gas & Electric Co.* (2023) 97 Cal.App.5th 1161, 1166.)

Landowners are not required to maintain walkways in perfect condition. (*Caloroso v. Hathaway* (2004) 122 Cal.App.4th 922, 927.) "Some defects are bound to exist even in the exercise of reasonable care in the maintenance of property and cannot reasonably be expected to cause accidents." (*Stathoulis v. City of Montebello* (2008) 164 Cal.App.4th 559, 566 (*Stathoulis*).)

"In appropriate cases, the trial court may determine, and the appellate court may determine de novo, whether a given walkway defect was trivial as a matter of law.

11

[Citations.]  'Where reasonable minds can reach only one conclusion—that there was no substantial risk of injury—the issue is a question of law, properly resolved by way of summary judgment.' [Citation.]  If, however, the court determines that sufficient evidence has been presented so that reasonable minds may differ as to whether the defect presents a substantial risk of injury, the court may not conclude that the defect is trivial as a matter of law." (*Huckey v. City of Temecula* (2019) 37 Cal.App.5th 1092, 1104–1105 (*Huckey*) ["Sidewalk elevations ranging from three-quarters of an inch to one and one-half inches have generally been held trivial as a matter of law" (*id.* at p. 1107)]; see, e.g., *Cadam v. Somerset Gardens Townhouse HOA* (2011) 200 Cal.App.4th 383, 386, 389 [walkway separation between three-fourths and seven-eighths inch was trivial as a matter of law]; *Ursino v. Big Boy Restaurants* (1987) 192 Cal.App.3d 394, 396–397 [raised edge of three-fourths inch trivial as a matter of law]; *Fielder v. City of Glendale* (1977) 71 Cal.App.3d 719, 724 & fn. 4 [citing cases finding trivial defects ranging from three-fourths inch to one and one-half inches]; *Barrett v. City of Claremont* (1953) 41 Cal.2d 70, 74 [same]; but see *Kasparian v. AvalonBay Communities* (2007) 156 Cal.App.4th 11, 28–30 [height differential ranging from 1/32 inch to 5/16 inch not trivial as a matter of law].)

California courts typically use a two-step analysis to determine whether a walkway defect is trivial as a matter of law.  "First, the court reviews evidence regarding the type and size of the defect.  If that preliminary analysis reveals a trivial defect, the court considers evidence of any additional factors such as the weather, lighting and visibility conditions at the time of the accident, the existence of debris or obstructions, and plaintiff's knowledge of the area.  If these additional factors do not indicate the defect was sufficiently dangerous to a reasonably careful person, the court should deem the defect trivial as a matter of law and grant judgment for the landowner." (*Stathoulis, supra*, 164 Cal.App.4th at pp. 567–568.)  The circumstances or factors considered in the second step of this approach include "whether there were any broken pieces or jagged

12

edges in the area of the defect, whether any dirt, debris or other material obscured a pedestrian's view of the defect, the plaintiff's knowledge of the area, whether the accident occurred at night or in an unlighted area, the weather at the time of the accident, and whether the defect has caused any other accidents." (*Huckey, supra*, 37 Cal.App.5th at p. 1105; accord, *Caloroso v. Hathaway, supra*, 122 Cal.App.4th at p. 927.)[3]

"In determining whether a given walkway defect is trivial as a matter of law, the court should *not* rely solely upon the size of the defect—in this case, on the depth or height of the walkway depression or elevation—although the defect's size 'may be one of the most relevant factors' to the court's decision. [Citation.] The court should consider other circumstances which might have rendered the defect a dangerous condition at the time of the accident." (*Huckey, supra*, 37 Cal.App.5th at p. 1105.)

2. *The Walkway Defect Was Trivial as a Matter of Law*

In support of their summary judgment motion, City Centre presented photographic evidence of the walkway's condition and Rutledge's declaration that "[a]ny height differentials between the pavers in the area circled by [Hinshaw] measured no more than 1/4 to 5/8 an inch." City Centre also presented evidence concerning the weather and lighting conditions, the lack of obstructions or debris obscuring Hinshaw's view of the walkway, and that since Hinshaw's fall, they had not received any complaints about the walkway or been informed of other accidents or complaints. Based on this evidence, the trial court concluded City Centre satisfied their burden of producing a

---

[3]  Recently, one Court of Appeal modified the prevailing two-step framework for determining whether a walkway defect is trivial "into a holistic, multifactor analysis." (*Stack v. City of Lemoore* (2023) 91 Cal.App.5th 102, 111 (*Stack*).) Under this approach, the appellate court began by considering the defect's size, which it agreed "is the primary determinant of triviality." (*Ibid.*) It also considered "the nature and quality of the defect," obstructions, lighting, and weather conditions, and whether the defect caused other accidents. (*Id.* at p. 115.)

prima facie showing that any defect in the walkway where Hinshaw fell was trivial as a matter of law.  On appeal, Hinshaw does not take issue with this portion of the court's ruling.  Instead, she asserts her evidence showed the existence of a triable issue of material fact concerning the dangerousness of the walkway defect and the court erred by concluding otherwise.

Hinshaw contends her statements in her responses to the interrogatories and in her deposition testimony presented sufficient evidence to create a factual dispute as to whether a defect in the walkway was dangerous or trivial.  She also contends the court erred by rejecting portions of Russell's original declaration.  Hinshaw does not challenge the court's evidentiary rulings that Russell's declaration suffered from hearsay and lack of foundation.  But she contends these evidentiary deficiencies could be corrected at trial, and therefore, the court should have considered all of Russell's original declaration.  Citing *Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931 (*Sweetwater*), Hinshaw asserts "[i]t was 'reasonably possible' that Russell's evidence would be admissible at trial, because it was not 'incurably admissible.'"  She asserts Russell's supplemental declaration cured the lack of foundation problem with his original declaration, but she does not contend the trial court should have considered Russell's supplemental declaration.

City Centre argues the court properly excluded the majority of Russell's original declaration because of its evidentiary deficiencies and Hinshaw's reliance on *Sweetwater* is misplaced because it is an anti-SLAPP case and the standard for evidence opposing a summary judgment motion is different.  We conclude Russell's declaration (original or supplemental) is not dispositive to our analysis and do not decide whether *Sweetwater* is applicable in this context.

We begin at the first step with the defect's size — "the '"most important"'" factor."  (*Stack, supra*, 91 Cal.App.5th at p. 111.)  City Centre's evidence was that "[a]ny height differentials between the pavers in the area circled by [Hinshaw] measured no

14

more than 1/4 to 5/8 an inch." Hinshaw disputed the materiality of this fact, asserting all of the circumstances surrounding the condition should be considered; she did not dispute the actual measurement. This factor leans heavily toward triviality. But "there is no firmly fixed 'arbitrary measurement in inches below which a defect is trivial as a matter of law and above which it becomes a question of fact whether or not the defect is dangerous.' [Citation.] This is because a 'court should *not* rely solely upon the size of the defect . . . although the defect's size "may be one of the most relevant factors" to the court's decision.' [Citations.] 'Instead, the court should determine whether there existed any circumstances surrounding the accident which might have rendered the defect more dangerous than its mere abstract depth would indicate.'" (*Id.* at p. 113.) Thus, we move on to the second step of the analysis, looking for any additional factors that indicate the defect was sufficiently dangerous to a reasonably careful person.

The evidence City Centre presented in support of their summary judgment motion showed the incident occurred at 9:00 a.m. on a clear and "probably sunny" day. It was neither rainy nor slippery. There were no lighting or visibility problems. Hinshaw did not describe any debris or obstructions on the walkway obscuring her view of the walkway and its defects. City Centre had not received other complaints about the walkway nor been informed of other accidents in the area where Hinshaw fell. These circumstances weigh in favor of deeming the condition trivial as a matter of law. And Hinshaw did not present any evidence showing the existence of a triable issue of material fact as to any of these factors.

Hinshaw's evidence concerned only one factor — the nature of the defect — but her evidence did not create a triable issue of material fact as to whether the defect was dangerous. The evidence submitted by City Centre showed Hinshaw was unsure where she fell or what caused her to fall, but she believed she fell because the walkway was uneven, there were "dips and divots," and broken and jagged bricks protruding upward. At her deposition, Hinshaw identified a large section of walkway as the area

15

where she believed she fell. In support of its summary judgment motion, City Centre presented photographs showing most of this walkway area. In these photographs, the walkway does not appear to be uneven, no "dips or divots" are visible, nor can broken and jagged bricks been seen jutting upward. In her opposition to the summary judgment motion, Hinshaw did not provide any photographs showing an uneven walkway, divots, dips, broken bricks, or jagged bricks protruding upward anywhere in the walkway area where she believes she fell. She offered no photographs at all. We, like the trial court, are deprived of any visual evidence rebutting City Centre's showing of a trivial defect.

Hinshaw did present Russell's declaration. But this evidence was woefully lacking. Russell declares he took measurements and photographs of the subject area, but neither was included with his declaration. He declared while he was on the premises, he "observed several areas of displaced pavers as well as lifted pavers presenting dangerous conditions throughout the entire exterior paver system, not only limited to the [s]ubject [a]rea" where he believes Hinshaw fell. Notably missing from Russell's declaration is a description of the pervasiveness of this issue in the area where Hinshaw believes she fell. He does not indicate how many displaced pavers he saw in the area where Hinshaw thought she fell. He does not explain the distance between the areas of displaced pavers or lifted pavers he saw in the subject area. These are important facts when trying to show there is a triable issue of material fact as to whether the minor height differential between the pavers nonetheless created a dangerous condition. (See *Caloroso v. Hathaway, supra*, 122 Cal.App.4th at p. 927 [in addition to size, court should consider whether walkway had broken pieces or jagged edges surrounding the defect].)

In his declaration, Russell stated: "Exterior outdoor paver systems should be flush in order to avoid presenting danger to people." We do not disagree, but that is not the legal standard nor is it evidence creating a triable issue of material fact. "Expert opinions can assist courts in determining whether 'sufficient evidence has been presented so that reasonable minds may differ as to whether the defect is dangerous.' [Citation.]

16

That assistance simply cannot come in the form of a pure legal conclusion; nor can the court rest on the expert's opinion alone, without independently evaluating the circumstances." (*Stack, supra*, 91 Cal.App.5th at p. 116.)  Russell's declaration did not provide the court with sufficient information to find there was a triable issue as to whether the defect was dangerous.

In her opposition, Hinshaw did not produce evidence sufficient to raise a triable issue of material fact whether the size of the height differential and the other circumstances surrounding the defect rendered it a dangerous condition.  Hinshaw's evidence did not provide a basis for reasonable minds to differ as to whether any defect in the walkway presented a substantial risk of injury to a pedestrian exercising due care.  "Where reasonable minds can reach only one conclusion—that there was no substantial risk of injury—the issue is a question of law, properly resolved by way of summary judgment." (*Caloroso v. Hathaway, supra*, 122 Cal.App.4th at p. 929.)  Here, the trial court properly concluded the defect was trivial as a matter of law and properly granted summary judgment.

## DISPOSITION

The judgment is affirmed.  Respondents are awarded costs on appeal.


MOTOIKE, J.

WE CONCUR:


MOORE, ACTING P. J.


GOODING, J.

17