Filed 4/21/26  Alarcon v. The Avalon Management Group CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| JULIA ALARCON et al., | B340678 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 22PSCV00888) |
| v. | |
| THE AVALON MANAGEMENT GROUP, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment and order of the Superior Court of Los Angeles County, Christian Gullon, Judge.  Affirmed in part, dismissed in part.

Kimball, Tirey & St. John, Abel Ortiz, Judy Y. Chiang, Eli A. Gordon, and Tiffany D. Truong for Plaintiffs and Appellants.

Messner Reeves, Kathleen Carter and Paul Hesse for Defendant and Respondent.

Plaintiffs are the owners of 63 units in the 150-unit Diamond Bar Village condominium complex (the Complex). In 2021, the City of Diamond Bar (the City) issued an order to vacate the Complex. The order was based in part on structural engineering reports prepared in 2017 and 2021 at the request of Diamond Bar Village Association (the HOA), the Complex's homeowners' association. The reports identified various problems resulting from decades of deferred maintenance. The 2021 report concluded the Complex's buildings were in a condition that posed a high risk to safety. Several weeks after issuing the order to vacate, the City concluded there was no immediate danger to the safety of the occupants and rescinded the order.

Plaintiffs brought this lawsuit against the structural engineer who prepared the reports, the City, the City's building official, the HOA and two of its directors, and respondent The Avalon Management Group, Inc. (Avalon), the HOA's managing agent since 2020. Plaintiffs asserted causes of action against Avalon for negligence and an accounting and alleged that Avalon's failure to disclose the 2017 structural engineering report to plaintiffs and to perform repairs was the catalyst for the City's issuance of the unwarranted order to vacate.

The trial court granted summary judgment in Avalon's favor. We affirm the judgment. We dismiss plaintiffs' appeal of the trial court's order summarily adjudicating the issue of the HOA's duty to defend Avalon.

## FACTUAL AND PROCEDURAL BACKGROUND
### *Avalon's Contract With the HOA*

On September 1, 2020, Avalon became the managing agent of the HOA. Avalon's predecessor, S&L Association Management, Inc. (S&L), assigned its management agreement with the HOA to Avalon. Pursuant to the assignment agreement, Avalon assumed "all obligations, liabilities and rights of [S&L] under the terms of the Management Agreements which accrue from and after the date hereof," and S&L remained "liable for all obligations and liabilities under the Management Agreements arising or accruing prior to the date hereof." In an addendum to the management agreement, the HOA recognized that "Avalon is not responsible for any prior acts or omissions prior to the start date of September 1, 2020."

"Subject to direction by the Board of [the HOA]," Avalon's functions under the management agreement included "[g]uid[ing] and assist[ing] members of the Board in the performance of their obligations" and in "the development of policies and procedures"; fiscal services, such as assisting the Board in the preparation of an annual budget; and, "[a]s authorized by the Board, direct and order to be done those things that are necessary to maintain the property in accordance with the provisions of the operating budget." With respect to physical management of the Complex, the agreement stated Avalon "shall not be responsible for taking any action unless specifically directed by the Board to do so, in writing," and "may only implement the decisions of the board." The agreement also provided that Avalon could not enter into contracts for services exceeding $1,000 without prior written approval.

3

The agreement provided that "[e]verything done by [Avalon] under the provisions of" the management agreement concerning the managing agent's responsibilities "shall be done as an agent for the [HOA], and all obligations or expenses incurred hereunder shall be for the account, on behalf, and at the expense of the Association." It further stated that Avalon "shall discharge its duties, in good faith, with ordinary care, and in the manner that [Avalon] believes to be in the best interest of the [HOA]."

At the time Avalon assumed management of the HOA, there was $2,225 in the HOA's reserve account and the association's "assessments were barely half a million [dollars] annually."

***Reports on the Condition of the Complex***

Before S&L became the HOA's managing agent, a former owner and resident of the Complex "had been essentially self-managing [the HOA] for years and failed to adhere to many of the legal requirements for homeowners associations, including proper financial disclosures and reserve funding which resulted in extensive deferred maintenance." After the HOA contracted with S&L, the HOA began to "look[ ] into addressing the deferred maintenance and repairs needed to the buildings."

To that end, the HOA retained defendant Khatri International, Inc., a structural engineering firm, to prepare a report on the condition of the Complex. Defendant Dilip Khatri is the director of Khatri International, Inc. (together, the Khatri defendants).

The report, dated June 15, 2017 (the 2017 Khatri Report), stated: "Over several decades there has been an accumulation of water damage, termite infestation, dry rot, and long term wear

4

and tear on the Roofs with infestation damage leading into the structural walls." Among other improvements, the 2017 Khatri Report recommended that the roof rafters, roof sheathing, and roof tile be removed and replaced. It concluded: "The Buildings have extensive damage but do not pose an immediate life safety threat, at the time of this inspection. The owners are urged to address these damaged areas promptly to avoid further risk to the occupants."

The HOA solicited proposals for the roof work needed. The first estimate was approximately $4.4 million. The HOA later received a proposal for under $1 million. Around the same time, a vehicle crashed into one of the Complex's buildings, and the HOA incurred $40,000 in repair costs. There were also continuing maintenance and repair issues, including plumbing leaks and an investigation into a potential gas leak.

In March 2020, S&L, at the direction of the HOA's board of directors, sent a letter to owners of units at the Complex. The letter stated that the HOA had "anticipated the need for a possible special assessment predicated on the deferred maintenance condition of our building's roofs as well as inadequate funding in the reserve account for the repair, maintenance, and replacement of the large components," and had alerted owners in its annual budget report. In anticipation of this special assessment, the HOA had not increased monthly assessments. However, the community "recently experienced several plumbing emergencies." The City also performed an inspection of the Complex and issued a correction notice in February 2020. Accordingly, the HOA found it "necessary to increase the monthly assessment by $30, effective May 1, 2020,"

5

and planned to impose an emergency assessment without membership approval.

Many residents reacted negatively to the notice of the increase in regular assessment and possible special assessment. Some called for the board of the HOA to resign.

At some point in 2021, the City requested that the HOA obtain an updated report from its engineer on the condition of the buildings.

The updated report, dated September 22, 2021 (the 2021 Khatri Report; together with the 2017 Khatri Report, the Khatri Reports), stated: "All buildings have roof rafter damage due to termite infestation, dry-rot and mold accumulated of decades of lack of maintenance." It further stated that "[e]ach building 2nd Floor units are RED Tagged due to impending risk from the roof rafter conditions" and "must be vacated to allow for safe inspection," and that "[e]ach building 1st Floor units are YELLOW Tagged as Medium Risk . . . ." (Italics and underline omitted.) The report defined "RED" as a high risk to "the occupancy/life-safety capacity of each building," and "YELLOW" as a medium risk.

### Order To Vacate

On September 23, 2021, Khatri e-mailed the 2021 Khatri Report to Raymond Tao, a director and employee of RKA Consulting Group (RKA). Pursuant to RKA's contract with the City, Tao acted as the City's building official. Khatri also e-mailed the report to Yvette Allen, Avalon's employee who served as the property manager for the Complex.

On September 27, 2021, Allen e-mailed unit owners to inform them that voluntary evacuation was "strongly recommended" for second story residents and "recommended" for

6

first story residents based on the 2021 Khatri Report.  The e-mail further stated that the HOA was working with the City and a structural engineer to determine next steps and advised: "A copy of the structural and civil engineer report can be obtained by contacting the Association manager Yvette Allen via email . . ., or our special project phone number . . . ."

On September 30, 2021, the City issued an order to vacate the Complex based on the conditions described in the Khatri Reports.  On October 1, 2021, Tao went to the Complex and "red-tagged" the second story units, which prohibited all entrance into those units, and "yellow-tagged" the first floor units, which prohibited access to those units except for property retrieval.

During a virtual HOA meeting on October 11, 2021, a unit owner asked why the 2017 Khatri Report had not been provided to owners.  Allen replied: "[I]t was not mailed to all the owners and that is very typical in any HOA.  That's the way HOAs operate.  Most HOAs do not just simply start mailing out things.  Documents are requested and they are mailed when requested."  Allen also stated: "Everyone is making the assumption that either [S&L] Management or Avalon Management, me and the board of directors, knew that things were so severe that it was going to come to this.  What—nobody knew that. . . .  The report that came out in 2017, and Dr. [Khatri], he did not tell us we were in dire straits . . . ."

During the same meeting, the HOA's attorney stated that "[a] lot of people filed appeals" of the order to vacate on the ground that "the City sort of jumped the gun on issuing [the] red tags without doing their own investigation."

The City retained a structural engineer to provide an opinion as to the structural integrity of the Complex's buildings

and to make recommendations about their safety. The report observed various conditions that allowed water to enter the walls of the structures. It concluded that the Complex "has numerous maintenance items that should be addressed" and failure to remedy the issues identified "will allow the conditions to worsen at an accelerated rate." However, it concluded that all units were safe to occupy, although access to the exterior decks of two units was unsafe.

Plaintiffs also engaged a structural engineering firm to assess the accuracy of the Khatri Reports. The firm concluded the Complex "presents extensive examples of significant deferred maintenance," but "disagree[d] with the life-safety significance of the observed conditions." However, it noted that "[r]epair of the damage in a timely manner is required to prevent additional deterioration, which could eventually lead to a life-safety hazard . . . ."

On November 4, 2021, the City rescinded the order to vacate based on the new engineering reports. The City "concluded that while there are substantial deferred maintenance issues throughout the Property that should be addressed, the condition of the Property does not create a widespread and immediate danger to the life or safety of all occupants of the individual units of the Property."

On December 1, 2021, the HOA, now under the management of a new board that consisted of five of the plaintiffs in this action, terminated its contracts with Avalon.

### *The Lawsuit*

Plaintiffs filed this action in August 2022 against the City, the Khatri Defendants, RKA, the HOA and two of its former directors, and Avalon.

The operative first amended complaint (FAC) alleged that the City's order to vacate and issuance of red and yellow tags caused plaintiffs to incur damages for loss of use, loss in value, loss of sales, decrease in rental and property value, and emotional damages. The FAC and incorporated documents alleged that the Khatri Reports caused a "severe false alarm" and "clearly did not justify an evacuation of all 150 units."

The FAC alleged Avalon acted negligently because it: 1) failed for over four years to perform the deferred maintenance repairs identified in the 2017 Khatri Report; 2) failed to seal the walls that were left open after repairs, causing these walls to mold over time; 3) failed to disclose the 2017 Khatri Report to owners, sellers, and buyers of the Complex's condominiums; 4) advised the HOA not to disclose the Khatri Reports to owners or sellers; 5) failed to perform a background check on Khatri; and 6) failed to obtain a second opinion from another licensed structural engineer before handing over the 2021 Khatri Report to the City. The FAC alleged these acts "caused the [City] to improperly red and yellow tag all the condominium units at [the Complex], which resulted in a massive evacuation of most of the residents of [the Complex], depriving Plaintiffs of the normal use and quiet enjoyment of their units, loss of rental income, out of pocket expenses, relocation fees paid to the tenants, and severe emotional distress."

Avalon filed a cross-complaint against the other defendants, asserting claims for express indemnity, comparative

indemnity, contribution, equitable indemnity, and declaratory relief.

Plaintiffs settled with the City for $35,000 and with the Khatri defendants for $250,000. The trial court concluded both settlements were made in good faith. Plaintiffs dismissed their claims against the HOA and the individual defendants.

Avalon moved for summary judgment. With respect to the negligence cause of action, Avalon argued it owed no duty of care to plaintiffs under the factors set forth by our Supreme Court in *Biakanja v. Irving* (1958) 49 Cal.2d 647, 650 (*Biakanja*). It further argued it had not breached any duty of care and its actions were not a proximate cause of plaintiffs' injuries resulting from the issuance of the order to vacate. With respect to the cause of action for an accounting, Avalon argued plaintiffs lacked standing because any misuse of funds was a wrong against the HOA, not plaintiffs; the HOA was an indispensable party; the action for an accounting was derivative; and plaintiffs had failed to meet the prerequisites for bringing an action on behalf of the HOA.

Avalon also moved for summary adjudication on the issue of the HOA's duty to defend.

The trial court issued a tentative order denying the motion for summary judgment without prejudice. At an initial hearing on the motion, Avalon's counsel offered to submit supplemental briefing addressing the tentative ruling. Counsel for plaintiffs objected, arguing: "We shouldn't have to come back and extend this when we already submitted everything for Avalon to reply to." The court granted Avalon's request.

After the parties completed their supplemental briefing, plaintiffs filed a request for an informal discovery conference.

Plaintiffs asserted that Avalon "completely failed to provide substantive responses to approximately 2/3 of Plaintiffs' written discovery requests" and "failed to provide code compliant responses to Plaintiffs' Request for Production of Documents."

Following a second hearing on Avalon's motions, the trial court granted summary judgment in Avalon's favor. The court assumed Avalon owed a duty of care to plaintiffs, but concluded there was no dispute of material fact as to whether Avalon had caused plaintiffs' injuries because plaintiffs' arguments about how Avalon could have prevented the City from issuing the order to vacate were based on speculation. It rejected plaintiffs' contention that material facts were unknown because Avalon had withheld discovery, "as there has been *ample* opportunity to seek any discovery needed and, to the contrary, there *has* been discovery produced."

The trial court further concluded it is the obligation of a homeowners' association to provide fiscal records to residents, and the HOA was therefore an indispensable party to an action for an accounting. The court also held that summary adjudication of the negligence claim established that the HOA was required to indemnify Avalon.

The trial court entered judgment for Avalon against all plaintiffs. Plaintiffs timely appealed.

## DISCUSSION

Plaintiffs contend the trial court abused its discretion by failing to continue the second hearing on the motion for summary judgment to allow the requested discovery conference to take place. They further argue the court erred in granting Avalon's motion for summary judgment because Avalon had a duty to disclose the 2017 Khatri Report, and whether Avalon's failure to

disclose the report and perform repairs caused plaintiffs' injury was a question of fact for the jury. Plaintiffs also contend the trial court erred in concluding that the HOA was an indispensable party to the cause of action for an accounting. Finally, although the HOA is separately represented and is not a party to this appeal, plaintiffs assert the trial court erred in granting summary adjudication of the issue of the HOA's duty to defend Avalon.

I.      **The Trial Court Did Not Abuse Its Discretion By Refusing To Continue the Hearing on the Motion for Summary Judgment**

"[I]n the absence of an affidavit that requires a continuance under section 437c, subdivision (h), we review the trial court's denial of appellant's request for a continuance for abuse of discretion." (*Cooksey v. Alexakis* (2004) 123 Cal.App.4th 246, 254; see Code Civ. Proc., § 437c, subd. (h) [continuance of hearing on motion for summary judgment is mandatory "[i]f it appears from the affidavits submitted in opposition . . . that facts essential to justify opposition may exist but cannot, for reasons stated, be presented"].) Plaintiffs did not submit an affidavit with their opposition asserting they required additional discovery to oppose Avalon's motion. Thus, the abuse of discretion standard applies.

The trial court ruled on Avalon's motion for summary judgment, notwithstanding plaintiffs' request for a discovery conference, because it found that Avalon had produced a large number of documents to plaintiffs and plaintiffs had "ample opportunity to seek any discovery needed." Plaintiffs argue this was an abuse of discretion because the court had granted Avalon's request for supplemental briefing. We disagree.

12

At the initial hearing on Avalon's motion for summary judgment, plaintiffs' counsel argued that plaintiffs had "already submitted everything for Avalon to reply to" without alluding to any discovery concerns. Plaintiffs did not request the discovery conference until over a month later, and nearly two months after they filed their opposition brief and supporting declarations. The trial court reasonably concluded that, to the extent plaintiffs' request for discovery conference was also a request to continue the summary judgment hearing, that request was untimely and unjustified.

II. **The Trial Court Properly Granted Avalon's Motion for Summary Judgment**

A. **Standard of review**

A motion for summary judgment is properly granted when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) We consider "all of the evidence set forth in the papers, except the evidence to which objections have been made and sustained by the court." (*Ibid*.) A defendant is entitled to summary judgment if the defendant demonstrates "[o]ne or more of the elements of the cause of action cannot be separately established." (*Id*., subd. (o)(1).) "We review a grant of summary judgment de novo; we must decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law." (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.)

"In our review, we keep in mind that a summary judgment motion is directed to the issues framed by the pleadings. [Citation.] Accordingly, the burden of a defendant moving for

13

summary judgment only requires that he or she negate a plaintiff's theories of liability *as alleged in the complaint*." (*Leyva v. Garcia* (2018) 20 Cal.App.5th 1095, 1102.) "We will affirm a summary judgment if it is correct on any ground that the parties had an adequate opportunity to address in the trial court, regardless of the trial court's stated reasons." (*Angelotti v. The Walt Disney Co.* (2011) 192 Cal.App.4th 1394, 1402.)

### B. Plaintiffs forfeited their evidentiary objections

We first address the evidence we may consider in this appeal.

Plaintiffs submitted written objections to Avalon's evidence and orally asked the court whether it intended to rule on their objections. Plaintiffs therefore preserved their evidentiary objections for appeal. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 533 ["because [respondent] submitted its evidentiary objections in proper form in writing and orally, all of its objections were preserved on appeal"].) However, the "burden [is] on the objector to renew the objections in the appellate court." (*Id.* at p. 534.)

Plaintiffs did not renew their objections in their opening brief. Instead, they argued the absence of any express ruling on the parties' evidentiary objections meant "all evidence must be considered" in our de novo review. In their reply brief, plaintiffs contend certain evidence "should never have been considered" and the trial court abused its discretion by failing to sustain their objections. Plaintiffs forfeited these arguments by failing to raise them in their opening brief, and by failing to support them with reasoned argument and citation to authority. (*In re A.C.* (2017) 13 Cal.App.5th 661, 672.)

Accordingly, we consider all evidence submitted below.

14

### C. Summary adjudication of the negligence cause of action was proper because Avalon did not owe plaintiffs a duty of care

"To establish a cause of action for negligence, the plaintiff must show that the 'defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury.' [Citation.] Recovery for negligence depends as a threshold matter on the existence of a legal duty of care." (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 213; *Brooks v. Eugene Burger Management Corp.* (1989) 215 Cal.App.3d 1611, 1619–1620 (*Brooks*) ["determination that a defendant owed the plaintiff no duty of care is a complete defense to a cause of action for negligence"].) "Duty is not universal; not every defendant owes every plaintiff a duty of care. A duty exists only if ' "the plaintiff's interests are entitled to legal protection against the defendant's conduct." ' [Citation.]" (*Brown*, at p. 213.) "A duty of care may arise through statute, contract, the general character of the activity, or the relationship between the parties." (*Ratcliff Architects v. Vanir Construction Management, Inc.* (2001) 88 Cal.App.4th 595, 604.)

"The determination whether a particular relationship supports a duty of care rests on policy and is a question of law." (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 620.) " 'Duty, being a question of law, is particularly amenable to resolution by summary judgment.' [Citation.]" (*Nalwa v. Cedar Fair, L.P.* (2012) 55 Cal.4th 1148, 1154.)[1]

---

[1] Plaintiffs contend the court could not properly grant summary judgment in Avalon's favor because "the duty of care analysis is subject to expert witness testimony," and Avalon did

We conclude, as a matter of law and on the undisputed facts presented below, that Avalon did not owe a duty of care to plaintiffs.

### i. Plaintiffs fail to establish that managing agents of homeowner's associations owe a general duty of care to homeowners

Plaintiffs do not identify any statutory basis for a duty of care, and there is no contractual privity between plaintiffs and Avalon. Although plaintiffs contend Avalon was hired to manage the Complex for plaintiffs' benefit, they do not cite any language in the management agreement or assignment agreement indicating that Avalon and the HOA had "a motivating purpose to benefit [plaintiffs], and not simply knowledge that a benefit to the [plaintiffs] may follow from the contract." (*Goonewardene v. ADP, LLC* (2019) 6 Cal.5th 817, 830 (*Goonewardene*).) The cases plaintiffs cite in support of their claim that "Avalon owed a duty of care to Plaintiffs, the beneficiaries" are factually inapposite, as they involved established fiduciary relationships. (*Ostayan v. Nordhoff Townhomes Homeowners Assn., Inc.* (2003) 110 Cal.App.4th 120, 129–130 [homeowners' association and homeowner]; *Ball v. Posey* (1986) 176 Cal.App.3d 1209, 1214 [attorney-client relationship].)

---

not submit any expert testimony. Although an expert opinion is generally necessary to negate the breach element of a professional negligence claim, it is not required to negate the existence of a duty of care, which, even in a professional negligence case, "presents a question of law which is to be determined by the courts alone." (*Nichols v. Keller* (1993) 15 Cal.App.4th 1672, 1682.) The existence of a duty of care was not in dispute in the cases plaintiffs cite for this point.

16

The only California case addressing the question of whether a managing agent of a homeowners' association owed a duty of care to individual homeowners concluded no such duty existed.[2] In *Berryman v. Merit Property Management, Inc.* (2007) 152 Cal.App.4th 1544, "the gravamen of the complaint was that [the managing agent] wrongfully charged homeowners . . . document and transfer fees upon the purchase or sale of their residence." (*Id.* at pp. 1548–1549.) Plaintiffs alleged various statutory violations as well as breach of fiduciary duty and negligence. (*Ibid.*) The trial court sustained the managing agent's demurrer and the appellate court affirmed. (*Id.* at p. 1548.) The Court of Appeal rejected the plaintiffs' argument that a managing agent of a homeowners' association has a fiduciary duty to individual homeowners because the homeowners' association has a fiduciary duty to its members. (*Id.* at pp. 1558–1559.) The court similarly rejected the plaintiffs' argument "that because the association owes a fiduciary duty to its members, it also owes an ordinary duty of care, and therefore

---

[2] Plaintiffs contend that *Affan v. Portofino Cove Homeowners Assn.* (2010) 189 Cal.App.4th 930, establishes that managing agents owe a duty to homeowners. The issue in *Affan* was whether maintenance decisions of a homeowners' association and its managing agent were entitled to judicial deference, and the appellate court concluded they were not. (*Id.* at pp. 940–944.) Because the trial court never reached the issue of whether the defendants' failure to investigate and to perform maintenance constituted negligence, the *Affan* court remanded for further proceedings. (*Id.* at pp. 945–946.) *Affan* did not decide whether a managing agent owes a duty to homeowners. Thus, it does not stand for the proposition for which plaintiffs cite it. (*People v. Knoller* (2007) 41 Cal.4th 139, 155 [appellate decisions are authority only for points actually involved and decided].)

17

[the managing agent] does also." (*Id*. at p. 1559.) It therefore affirmed the trial court's order sustaining the demurrer as to plaintiffs' negligence and negligence per se causes of action. (*Ibid*.)

Plaintiffs incorrectly assert that *Berryman* did not involve a negligence claim and seek to distinguish it on the ground that it "involves causes of action relating to a contract." That is not a meaningful distinction, considering plaintiffs also rely on Avalon's contractual obligation to provide guidance to the HOA board to argue that a triable issue of material fact exists as to whether Avalon had a duty to disclose the 2017 Khatri Report.

Plaintiffs therefore fail to establish that managing agents for a homeowners' association generally owe a duty of care to individual homeowners.

### ii. Policy considerations weigh against the imposition of a tort duty on the managing agent of a homeowner's association

Even when "the existence of a duty is not the general rule," courts may conclude a duty arises from a contract in the absence of privity "based on public policy considerations." (*Lichtman v. Siemens Industry Inc.* (2017) 16 Cal.App.5th 914, 921.) "The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are [1]] the extent to which the transaction was intended to affect the plaintiff, [2]] the foreseeability of harm to him, [3]] the degree of certainty that the plaintiff suffered injury, [4]] the closeness of the connection between the defendant's conduct and the injury suffered, [5]] the moral blame attached to the defendant's

18

conduct, and [6)] the policy of preventing future harm." (*Biakanja*, *supra*, 49 Cal.2d at p. 650.)

However, the *Biakanja* factors are not controlling. Our Supreme Court subsequently concluded that the imposition of tort liability may be inappropriate based on other policy considerations.

In *Goonewardene*, *supra*, 6 Cal.5th 817, the Supreme Court considered "whether, when an employer hires an independent payroll service provider (hereafter payroll company) to take over all the payroll tasks that would otherwise be performed by an internal payroll department, the employee may bring a civil action against not only his or her employer but against the payroll company as well." (*Id*. at p. 820.) The court concluded that an employee could not maintain a breach of contract action against the payroll company as a third party beneficiary of the contract between the employer and payroll company, since the motivating purpose of the contract was "to provide a benefit *to the employer*," and any benefit to the employees was incidental. (*Id*. at p. 835.) Although the plaintiffs argued "that many of the factors identified in *Biakanja* support[ed] imposing on a payroll company a duty of care to an employee," and the Supreme Court did not disagree, the court concluded that the payroll company did not owe plaintiffs a duty of care based on five policy considerations. (*Id*. at p. 838; see *id*. at pp. 839–841.)

"First and perhaps most significantly, . . . California law already provides the employee with a full and complete remedy for any wage loss the employee sustains as a result of the payroll company's negligent conduct," as employees have a "well-established right under the labor statutes to recover in a civil action against the employer the full wages and other significant

19

remedies . . . that are authorized under those statutes." (*Goonewardene, supra,* 6 Cal.5th at p. 839.)  Thus, "the imposition of a separate tort duty of care on a payroll company is generally unnecessary to adequately protect the employee's interests." (*Ibid.*)  "Second, imposing tort liability upon the payroll company is not needed as a means of deterring negligent conduct on the part of the payroll company." (*Ibid.*)  The contract between the employer and payroll company obligated the payroll company "to act with due care in ensuring that the employer fulfills its obligations to its employees under the labor statutes and wage orders." (*Ibid.*)  Thus, the court found the payroll company would presumably be liable to the employer if its negligence in failing to comply with applicable labor laws resulted in the employer being held liable in an action brought by employees.  (*Ibid.*)

Third, because the court had concluded that the employee plaintiffs were not entitled to bring a contract action against the payroll company, "it would clearly be anomalous to impose tort liability, with its increased potential damages [citation], upon the payroll company based upon its alleged failure to perform its obligations under its contract with plaintiff's employer." (*Goonewardene, supra,* 6 Cal.5th at p. 840.)  "Fourth, the imposition on a payroll company of a duty of care to an employee may improperly distort the payroll company's performance of its contractual obligations to the employer in at least some circumstances." (*Ibid.*)  "[T]he type of damages that is generally available in a tort action includes items that are unavailable in a contract action, and, in instances in which the meaning of a provision of a labor statute or wage order is uncertain, the potential of greater liability may induce the payroll company to

place the employee's interests above those of the employer with whom the payroll company has directly contracted." (*Ibid*.) Finally, the Supreme Court observed that an imposition of a tort duty of care on a payroll company could "add an unnecessary and potentially burdensome complication to California's increasing volume of wage and hour litigation." (*Id*. at p. 841.)

Our Supreme Court's decision in *Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370 (*Bily*), is also instructive. The issue in *Bily* was whether an accountant hired to conduct an audit of a client's financial statements owed a duty of professional care to other persons in the conduct of that audit. (*Id*. at p. 400.) The court observed that, "[e]ven when foreseeability was present," it has "declined to allow recovery on a negligence theory when damage awards threatened to impose liability out of proportion to fault . . . ." (*Id*. at p. 398.) The court found that the client controlled the information base for the audit and the dissemination of the audit report and the communications that accompany it. (*Id*. at p. 400.) Thus, "regardless of the efforts of the auditor, the client retains effective primary control of the financial reporting process." (*Ibid*.) Our high court observed that, "[a]lthough the auditor's role in the financial reporting process is secondary and the subject of complex professional judgment," it may face "massive" liability in a negligence suit by a third party. (*Ibid*.) It concluded that endorsement of third party negligence suits against auditors on the ground of foreseeability would be "distinctly out of proportion to: (1) the fault of the auditor . . . ; and (2) the connection between the

21

auditor's conduct and the third party's injury . . . ." (*Id*. at p. 402.)

On balance, these policy considerations do not support the imposition of a duty of care upon a managing agent of a homeowners' association in this context.

### *a.* **Goonewardene considerations**

Even if some *Biakanja* factors would support imposing a duty of care on Avalon, we follow the reasoning of *Goonewardene* and conclude that policy considerations weigh against imposing on Avalon a tort duty of care to plaintiffs.

As in *Goonewardene*, plaintiffs could obtain a full and complete remedy from the HOA. (*Goonewardene, supra*, 6 Cal.5th at p. 839.) "[I]n recognition of the increasingly important role played by private homeowners' associations . . . , the courts have recognized that such associations owe a fiduciary duty to their members." (*Cohen v. Kite Hill Community Assn.* (1983) 142 Cal.App.3d 642, 650–651; *Frances T. v. Village Green Owners Assn.* (1986) 42 Cal.3d 490, 513 [directors of homeowner's association are fiduciaries].) " 'A fiduciary must tell its principal of all information it possesses that is material to the principal's interests.' " (*Lazar v. Bishop* (2024) 107 Cal.App.5th 668, 680.) Under the Davis-Stirling Common Interest Development Act (Civ. Code, § 4000 et seq.; the Act), the HOA is required to issue an annual budget report including, among other things, "[a] statement as to whether the board has determined to defer or not undertake repairs or replacement of any major component with a remaining life of 30 years or less, including a justification for the deferral or decision not to undertake the repairs or replacement." (*Id.*, § 5300, subd. (b)(4).) Assuming the 2017 Khatri Report was material to the decision to undertake or defer repairs of the roofs,

22

the HOA presumably had a duty to disclose the report to its members. (See *Hill v. State Farm Mutual Automobile Ins. Co.* (2008) 166 Cal.App.4th 1438, 1490 [" 'corporate directors must honestly disclose all material facts when they undertake to give out written statements concerning the condition or business of their corporation' "].)

Further, the Act authorizes members of a homeowner's association to bring a civil action against the association to enforce its covenants, conditions, and restrictions. (Civ. Code, § 5975, subds. (b), (c).) Here, the HOA's covenants, conditions, and restrictions state that the HOA "shall paint, maintain, repair and make necessary Improvements to the Common Areas, or shall contract for such maintenance, repair, and Improvements, to assure the maintenance of the Common Areas, as well as the exteriors of the balcony and patio elements of the Units, in good condition and repair . . . ."

Plaintiffs could, and *did*, assert a cause of action against the HOA based on its failure to disclose the 2017 Khatri Report and to perform repairs. The imposition of a separate tort duty on the HOA's managing agent is therefore unnecessary to protect plaintiffs' interests.

Imposing tort liability on Avalon is likewise unnecessary to deter negligent conduct. (*Goonewardene, supra*, 6 Cal.5th at p. 839.) The management agreement provides that Avalon must exercise ordinary care in the discharge of its duties. To the extent Avalon's failure to do so caused the HOA to incur liability from homeowners, Avalon would be liable to the HOA under their agreement. Imposing liability on Avalon to homeowners "will not appreciably increase [its] incentive to avoid negligent conduct . . . ." (*Ibid.*)

23

Since there is no evidence indicating that plaintiffs are entitled to assert a breach of contract action against Avalon under California's third party beneficiary doctrine, the imposition of "tort liability, with its increased potential damages," would also "clearly be anomalous" here. (*Goonewardene*, *supra*, 6 Cal.5th at p. 840.)

Finally, imposing a duty of care by a managing agent to individual owners could improperly distort Avalon's performance of its duties to the HOA. (*Goonewardene*, *supra*, 6 Cal.5th at p. 840.) Avalon is the HOA's agent, and its contractual role "is to implement the decisions and the policy established by the Board of Directors of the [HOA]." However, to avoid the potential of greater liability in a tort action brought by plaintiffs, Avalon might be induced to act contrary to its limited role and override the decisions of the HOA's board.

### *b.* **Liability out of proportion to fault**

Further, as in *Bily*, client control predominates here. (*Bily*, *supra*, 3 Cal.4th at p. 400.) Avalon's contractual duty is to carry out the decisions of the HOA's board. Avalon cannot undertake repairs or enter into contracts exceeding $1,000 without the board's approval. Its duty to "[g]uide and assist members of the Board in the performance of their obligations" does not mean it controls the course of action the HOA's board chooses to take.[3]

---

[3] As the trial court observed at the second hearing on the motion for summary judgment, there is no evidence that Avalon ever advised the HOA not to disclose the 2017 Khatri Report. Plaintiffs' counsel did not dispute this finding but argued the absence of evidence was caused by Avalon withholding discovery. On appeal, plaintiffs argue that Avalon's failure to submit evidence that it recommended that the HOA disclose the 2017

24

Avalon also faces substantial liability that is out of proportion to the indirect part it played in plaintiffs' injuries. (*Bily*, *supra*, 3 Cal.4th at p. 402.) Plaintiffs alleged they sustained no less than $2 million in damages because of the City's issuance of an unwarranted order to vacate based on the Khatri Reports. Plaintiffs settled with the City and the Khatri defendants for less than $300,000 in total and dismissed their claims against the HOA. Thus, the only defendants from whom plaintiffs could seek to recover the outstanding $1.7 million or more in damages were Avalon and RKA.

### *iii.* **Conclusion**

Because the absence of a duty of care is a complete defense to plaintiffs' negligence cause of action (*Brooks*, *supra*, 215 Cal.App.3d at pp. 1619–1620), the trial court properly granted summary adjudication.[4]

---

Khatri Report means that we may infer that it recommended the opposite. " 'When opposition to a motion for summary judgment is based on inferences, those inferences must be reasonably deducible from the evidence, and not such as are derived from speculation, conjecture, imagination, or guesswork.' [Citation.]" (*Advent, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA* (2016) 6 Cal.App.5th 443, 459.) We decline to draw inferences from the absence of evidence.

[4] For the first time at oral argument, plaintiffs cited *Stoiber v. Honeychuck* (1980) 101 Cal.App.3d 903, to argue that policy considerations support imposing a duty of care on Avalon. The *Stoiber* court held that a landlord's rental agent could be held liable in tort for damages arising from a failure to maintain the premises, in part "because the transaction between the rental agent and the landowner was clearly intended to affect the

### D. Summary adjudication of the cause of action for an accounting was proper because plaintiffs lack standing

"An action for an accounting has two elements: (1) 'that a relationship exists between the plaintiff and defendant that requires an accounting' and (2) 'that some balance is due the plaintiff that can only be ascertained by an accounting.' [Citations.]" (*Sass v. Cohen* (2020) 10 Cal.5th 861, 869.) Summary adjudication of a cause of action for an accounting is proper where there is "no fiduciary relationship between the parties" and "no proof of any other special relationship that would give rise to an accounting remedy." (*Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 910.)

In their opening brief, plaintiffs argue the court erred in granting summary adjudication of the cause of action for an

---

tenants, and because harm would be foreseeable to the tenants if the rental agent did not properly perform his duty." (*Id.* at pp. 930–931.)

We need not consider arguments plaintiffs failed to raise in their briefing. (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1554, fn. 9.) Even if we did, *Stoiber* predates *Goonewardene* and *Bily*. Our high court has since explained that a defendant's knowledge that a benefit to plaintiffs may follow from a contract is insufficient to establish that plaintiffs are third party beneficiaries (*Goonewardene*, *supra*, 6 Cal.5th at p. 830), and imposing a tort duty of care where there is no contractual duty is "anomalous." (*Id.* at p. 840.) It has also explained that foreseeability of harm is not determinative. (*Bily*, *supra*, 3 Cal.4th at p. 398.) To the extent *Stoiber* is inconsistent, we follow the decisions of our Supreme Court.

accounting because "none of the authority cited by Avalon instruct that the owners of a condominium complex need to file a derivative lawsuit against the management company for accounting based on missing records." Plaintiffs neither identify nor distinguish the cases Avalon cited. In their reply brief, plaintiffs assert the decisions Avalon cited in its respondent's brief are inapposite because they concerned actions brought by shareholders, which the HOA does not have.

The HOA is a nonprofit mutual benefit corporation,[5] which has "all of the powers of a natural person" (Corp. Code, § 7140), including the capacity to sue. (*Tabarrejo v. Superior Court* (2014) 232 Cal.App.4th 849, 861 [identical language in Corp. Code, § 207 established corporation's general capacity to sue].) "Because a corporation exists as a separate legal entity, the shareholders have no direct cause of action or right of recovery against those who have harmed it. The shareholders may, however, bring a derivative suit to enforce the corporation's rights and redress its injuries when the board of directors fails or refuses to do so." (*Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1108.) "An action is deemed derivative ' "if the gravamen of the complaint is injury to the corporation, . . . or it seeks to recover assets for the corporation or to prevent the dissipation of its assets." ' [Citation.]" (*Ibid.*)

---

[5] Plaintiffs contend Avalon failed to cite evidence that the HOA is a nonprofit mutual benefit corporation in its respondents' brief, but they do not refute that fact and could not without contradicting the FAC and its exhibits. The HOA also identified itself as a nonprofit mutual benefit corporation in numerous filings below.

27

Plaintiffs do not meaningfully dispute that the cause of action for an accounting asserts rights belonging to the HOA, which would be entitled to receive some balance if Avalon mismanaged its assets. Plaintiffs have not established that any special or fiduciary relationship exists between themselves and Avalon. The cause of action for an accounting therefore depends on the existence of a special relationship between Avalon and the HOA, which further demonstrates that the claim asserts rights belonging to the HOA.

We are not persuaded by plaintiffs' attempt to distinguish the cases Avalon cited on the ground that the HOA does not have shareholders. The members of a nonprofit mutual benefit corporation are subject to essentially identical requirements as shareholders for bringing derivative actions. (Compare Corp. Code, §§ 7710, subd. (b) & 800, subd. (b).) Plaintiffs did not comply with these requirements. (See *id.*, § 7710, subd. (b)(2).)

Plaintiffs instead suggest it does not matter whether the action was brought in their name or the HOA's because "all five Board members of the HOA consisted of Plaintiffs in this lawsuit." They cite no authority for the proposition that we may ignore the HOA's separate legal identity under the circumstances of this case and therefore forfeit that argument.

The trial court properly granted summary adjudication of the cause of action for an accounting.

## III. Plaintiffs Fail to Establish Summary Adjudication of the HOA's Duty to Defend is Appealable

" 'Generally, an order granting summary adjudication is an intermediate order which is "reviewable on appeal from the *final judgment* in the action." [Citation.] However, such an order is appealable if it effectively disposes of the entire matter.

28

[Citation.]' [Citation.]" (*Wilson v. County of San Joaquin* (2019) 38 Cal.App.5th 1, 7.) The appellant bears the burden of establishing the appealability of an interlocutory ruling. (*Brown v. Upside Gading, LP* (2019) 42 Cal.App.5th 140, 144.) "A reviewing court lacks jurisdiction to consider appeals from a nonappealable order, and has the duty to dismiss such appeals." (*In re Javier G.* (2005) 130 Cal.App.4th 1195, 1201.)

Plaintiffs argue we should reverse the trial court's summary adjudication order in favor of Avalon on the issue of the HOA's duty to defend because it was "interconnected" with the trial court's ruling on Avalon's motion for summary judgment against plaintiffs. They do not cite any authority to support the argument that interconnectedness with an appealable order renders an interlocutory order appealable, nor do they establish that the summary adjudication order disposed of Avalon's entire case against the HOA. "We need not analyze this issue further because '[i]t is not our responsibility to develop an appellant's argument.' [Citation.]" (*SI 59 LLC v. Variel Warner Ventures, LLC* (2018) 29 Cal.App.5th 146, 156.) Because plaintiffs fail to carry their burden of establishing the summary adjudication order is appealable, we dismiss this portion of their appeal.

## DISPOSITION

The judgment is affirmed. The appeal of the trial court's summary adjudication order concerning Diamond Bar Village Association's duty to indemnify Avalon Management, Inc. is dismissed. Avalon Management, Inc. shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

HANASONO, J.

30